BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Thomas P. O'Brien (State Bar No. 166369)
  tobrien@bgrfirm.com
Luke A. Fiedler (State Bar No. 307614)
  lfiedler@bgrfirm.com
801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808

Michael J. Sullivan (BBO No. 487210)
  msullivan@ashcroftlawfirm.com
ASHCROFT LAW FIRM
200 State St., 7th Floor, Boston, MA 02109
Telephone: (617) 573-9400
Facsimile: (617) 933-7607
*(pro hac vice application pending)*

*Attorneys for Defendant Antoun Sehnaoui*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE DAOUD, an individual, and JOUMANA DAOUD, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN, S.A.L., a Société Anonyme Libanaise; ANTOUN SEHNAOUI, an individual; PIKES PEAK NATIONAL BANK, an unknown entity, and DOES 1-100, inclusive,<br>          Defendants. | Case No. 8:21-cv-000335-CJC-KES<br><br>**DEFENDANT ANTOUN SEHNAOUI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Judge: Hon. Cormac J. Carney<br>Date: March 29, 2021<br>Time: 1:30 p.m.<br>Crtrm: 9B |

**TO THE HONORABLE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE** that on March 29, 2021, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 9B of the Ronald Reagan Federal Building and United States Courthouse, before the Honorable Cormac J. Carney, Defendant Antoun Sehnaoui will and hereby does move to dismiss the following claims asserted by Plaintiffs Antoine Daoud and Joumana Daoud: (1) negligent interference with prospective economic relations; (2) intentional interference with prospective economic relations; (3) misappropriation; (4) negligence; (5) intentional misrepresentation; (6) negligent misrepresentation; (7) violation of Business and Professions Code § 17200.

This motion is made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(2), 12(b)(5), and 12(b)(6).  This motion is based on this notice, the attached memorandum of points and authorities, the attached declarations, the Court's file in this action, and any further evidence or argument presented at a hearing on this motion. Furthermore, this motion is made following the conference of counsel pursuant to Local Rule 7-3, which initially took place by email and with an invitation for a phone conference on February 19, 2021, *i.e.*, the date that undersigned counsel filed a notice of removal to this Court.  Counsel for the parties engaged in further email communication on February 23, 24, and 25, and met via telephonic conference on February 25.  *See* Fiedler Decl. ¶¶ 3-5.

DATED:  February 26, 2021

Respectfully Submitted,
BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Thomas P. O'Brien

By:  /s/ Thomas P. O'Brien
Thomas P. O'Brien
**Attorneys for Defendant Antoun Sehanoui**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  BACKGROUND ..................................................................................................2

   A.  Plaintiffs ..........................................................................................................2

   B.  Defendants........................................................................................................2

      1.   Société Générale De Banque Au Liban, S.A.L. .......................................2

      2.   Antoun Sehnaoui.......................................................................................2

      3.   Pikes Peak National Bank........................................................................2

      4.   Does 1 through 100, inclusive ..................................................................3

   C.  Procedural History ..........................................................................................3

      1.   The Complaint ..........................................................................................3

      2.   Service and Summons................................................................................5

      3.   Removal ....................................................................................................6

III. ARGUMENT ......................................................................................................6

   A.  Sehnaoui Has Not Been Properly Served ......................................................6

   B.  The Complaint Must Be Dismissed for Lack of Personal Jurisdiction ...........8

      1.   The Complaint's Allegations Fail to Establish General or Specific
         Personal Jurisdiction over Sehnaoui....................................................9

      2.   The Complaint Fails to Allege Facts Sufficient to Warrant Application of
         the "Alter Ego" Doctrine .................................................................11

   C.  The Complaint Fails to Plead the Fraud Allegations in All Seven Counts with
     Particularity, as Required by Rule 9(b)..........................................................14

   D.  The Complaint Fails to State a Claim upon Which Relief May Be Granted.16

      1.   The Economic Loss Rule Requires Dismissal of All Seven Counts.......17

DEFENDANT SEHNAOUI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS
## (Continued)

    2.     Additional Pleading Deficiencies ............................................................18

IV. The Court Should Dismiss the Complaint with Prejudice ................................19

V.  CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
121 F. Supp. 3d 950 (C.D. Cal. 2015) ...............................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................10, 19

*Audigier Brand Management v. Perez*, No. CV 12–5687–CAS (RZx), 2012 WL
5470888 (C.D. Cal. Nov. 5, 2012) .......................................17

*Balisteri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988).......................................16, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................16, 17

*Bondit LLC v. Hallows Movie Inc.*,
No. 2:19-CV-09832-SB-RAO, 2020 WL 7775619 (C.D. Cal. Nov. 23, 2020) ....9

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) .......................................8, 9, 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......................................................9

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996)...........................................16

*Colt  Studio, Inc. v. Badpuppy Enter.*,
75 F. Supp. 2d 1104 (C.D. Cal. 1999) .......................................10

*Daimler AG v. Bauman*,
571 U. S. 117 (2014) .......................................8, 14

*Daou v. BLC Bank, S.A.L.*,
No. 1:20-cv-4438 (S.D.N.Y. June 10, 2020) .......................................3

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019).......................................14, 15

# TABLE OF AUTHORITIES
## (Continued)

*Destfino v. Reiswig*,

   630 F.3d 952 (9th Cir. 2011) ............................................................................. 15

*Flowers v. Wells Fargo Bank, N.A.*,

   No. C 11–1315 PJH, 2011 WL 2748650 (N.D. Cal. July 13, 2011) ............. 15, 16

*Gerena v. Korb*,

   617 F.3d 197 (2d Cir. 2010) .................................................................................. 7

*Giles v. General Motors Acceptance Corp.*,

   494 F.3d 865 (9th Cir. 2007) ............................................................................... 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,

   564 U.S. 915 (2011) ............................................................................................... 9

*In re Currency Conversion Fee Antitrust Litig.*,

   265 F. Supp. 2d 385 (S.D.N.Y. 2003) ............................................................. 12, 13

*JMP Securities LLP v. Altair Nanotechnologies Inc.*,

   880 F. Supp. 2d 1029 (N.D. Cal. 2012) .............................................................. 18

*Jones v. Cmty. Redevelopment Agency of City of Los Angeles*,

   733 F.2d 646 (9th Cir. 1984) ............................................................................... 20

*Kearns v. Ford Motor Co.*,

   567 F.3d 1120 (9th Cir. 2009) ............................................................................. 14

*Lopez v. Smith*,

   203 F.3d 1122 (9th Cir. 2000) ....................................................................... 17, 19

*Mililani Grp., Inc. v. O'Reilly Auto., Inc.*,

   621 Fed. App'x 436 (9th Cir. 2015) .................................................................... 13

*Milliken v. Meyer*,

   311 U.S. 457 (1940) ............................................................................................... 8

*Morris & Co. v. Skandinavia Ins. Co.*,

   279 U.S. 405 (1929) ............................................................................................... 6

# TABLE OF AUTHORITIES
### (Continued)

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) ................................................................................. 6

*Neilson v. Union Bank of California, N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................... 12, 13

*North American Chemical Co. v. Superior Court*,
    59 Cal. App. 4th 764 (1997)............................................................... 18

*Panavision Int'l, L.P. v. Toeppen*,
    945 F. Supp. 1296 (C.D. Cal. 1996) ................................................. 18

*S.E.C. v. Hickey*,
    322 F.3d 1123 (9th Cir. 2003)............................................................ 12

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013)............................................................ 15

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (2000)........................................................ 12, 13

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001).............................................................. 19

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)........................................................ 15, 16

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................ 17

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)............................................................ 14

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...................................................... 8, 9, 10, 11

*Wolfe v. United States*,
    798 F.2d 124 (9th Cir. 1986).............................................................. 12

# **TABLE OF AUTHORITIES**
### (Continued)

*Zehavi v. Reef*,

   No. 18-CV-06394-EJD, 2019 WL 917423 (N.D. Cal. Feb. 25, 2019) .................6

**Statutes**

28 U.S.C. § 1441 ...........................................................................................................6

18 U.S.C. § 1446(b)(1) ................................................................................................6

28 U.S.C. § 1448 ...........................................................................................................6

28 U.S.C. §1332 ............................................................................................................6

**Other Authorities**

Business and Professions Code § 17200 ......................................................3, 14, 17

Cal. Code Civ. Proc. § 410.10 ....................................................................................8

Cal. Civ. Proc. Code § 415.20 ....................................................................................7

Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1082 (4th ed.) ...............................6

**Rules**

Fed. R. Civ. P. 4 ...........................................................................................................6

Fed. R. Civ. P. 8(b) ....................................................................................................12

Fed. R. Civ. P. 9(b) ..............................................................................................passim

Fed. R. Civ. P. 12(b)(2) ..............................................................................................8

Fed. R. Civ. P. 12(b)(5) ..............................................................................................6

Fed. R. Civ. P. 12(b)(6) ......................................................................................16, 17

DEFENDANT SEHNAOUI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this removed lawsuit, the Plaintiffs claim—without any supporting factual allegations—that they were victimized by an international conspiracy perpetrated by the entire Lebanese banking system, including the Banque du Liban ("BDL"), the central bank and regulatory authority for all banks in Lebanon. Plaintiffs contend that those entities—together with Co-Defendant Société Générale De Banque Au Liban, S.A.L. ("SGBL")—enticed them into opening an unknown number of Lebanese retail bank accounts with unspecified high interest rates, only to later intentionally impose monetary policies (apparently using Lebanon's current highly-publicized fiscal crisis as subterfuge) to prevent them from wiring funds to the United States in U.S. dollars. The Complaint's fanciful allegations appear to have largely been copied word-for-word from an unrelated lawsuit brought last year by other lawyers in the Southern District of New York.

Even more farfetched is the fact that the Plaintiffs have named Antoun Sehnaoui, the Chairman of SGBL, as a Defendant.  The Plaintiffs attempted to serve only him (and not the two corporate defendants) at a Maryland residence, far from his home in Lebanon and without any legitimate basis for doing so. The Complaint's conspiratorial allegations lack factual support for the theory that Sehnaoui had anything to do with the alleged tortious acts, had any contact with or knowledge of these California Plaintiffs, or that he serves as anything but a responsible, good-faith officer of SGBL, an international commercial bank, and of Pikes Peak National Bank ("PPNB"), an unrelated domestic bank in Colorado, which also has been superfluously named as a Defendant.

For the reasons that follow, the Complaint should be dismissed as to Sehnaoui for lack of service, lack of personal jurisdiction, insufficient allegations to support either an alter ego theory or a fraud claim under Rule 9(b), and failure to state a claim due to the economic loss rule and other basic legal principles. The

frivolity of the Complaint warrants Sehnaoui's further request to dismiss the Complaint as to him with prejudice, because any leave to amend under the circumstances would be futile.

## II. BACKGROUND

### A. Plaintiffs

According to the Complaint, Plaintiffs are two individuals who reside in Orange County, California. Compl. ¶¶ 1–2.

### B. Defendants

#### 1. Société Générale De Banque Au Liban, S.A.L.

SGBL is a Lebanese joint stock company headquartered in Lebanon. Compl. ¶ 3. As the third largest commercial bank in Lebanon, SGBL offers banking and financial services to individuals and corporations in Lebanon and neighboring countries. Kabengi Decl. ¶ 5. SGBL is organized under and subject to the laws of Lebanon, and is regulated by the BDL, which has regulatory authority over all banks in Lebanon. *Id.* ¶ 4. SGBL is not incorporated, licensed, registered as a foreign corporation, or otherwise authorized to conduct business anywhere in the United States. *Id.* ¶ 6. SGBL has no subsidiaries, offices, branches, employees, directors, or officers in California or elsewhere in the United States. *Id.* at 7–8, 10.

#### 2. Antoun Sehnaoui

Sehnaoui is the Chairman of SGBL, *id.* ¶ 5, and, separately, the Chairman of PPNB, *id.* ¶ 5. Sehnaoui is a citizen and resident of Lebanon. Sehnaoui Decl. ¶ 4. He is not a resident of the United States. Sehnaoui Decl. ¶ 3. The Complaint incorrectly states that Sehnaoui "resides in Bethesda, Maryland." Compl. ¶ 5.

#### 3. Pikes Peak National Bank

The Complaint states that PPNB "is an unknown entity with its headquarters in Colorado Springs, Colorado," and that "it is a privately held bank and a member of the Federal Deposit Insurance Corporation." Compl. ¶ 4. The Complaint does not allege that PPNB has any presence in California.

### 4. Does 1 through 100, inclusive

The Complaint lists as Defendants "Does 1 through 100, inclusive." *Id*. ¶ 7. It states that "Plaintiffs are informed and believe and based thereon allege that each of such fictitious named defendants are responsible in some manner or status to pay the obligations described herein and that Plaintiffs' losses as herein alleged were proximately caused by Defendants' acts." *Id.* No acts, statements, or omissions are attributed specifically to these 100 Defendants in the Complaint.

### C. Procedural History

#### 1. The Complaint

On December 16, 2020, Plaintiffs filed their Complaint in Orange County Superior Court. *Id*. ¶ 1. The Complaint alleges seven state law claims against all three defendants, including (1) negligent interference with prospective economic relations, (2) intentional interference with prospective economic relations, (3) misappropriation, (4) negligence, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) violation of Business and Professions Code § 17200. The seven Counts all arise from an alleged retail banking relationship between the Plaintiffs (as depositors) and SGBL.

The Complaint's "General Allegations," which are largely copied word-for-word from an unrelated lawsuit involving different parties and lawyers in the Southern District of New York,[1] describe a wide-ranging conspiracy and "Ponzi scheme" by which SGBL and other banks colluded with the BDL (*i.e.*, Lebanon's its equivalent of the U.S. Federal Reserve System) to "lure[] investments of USD by fraudulently representing to depositors that they would earn exceedingly high interest rates while still having ready access to their USD." *Id*. ¶ 14. According to the Complaint, the Defendants, "among other Lebanese banks, . . . collusively

---

[1] *See Daou v. BLC Bank, S.A.L.*, No. 1:20-cv-4438, Dkt. 1 (S.D.N.Y. June 10, 2020) ("Daou Complaint"). *Compare, e.g.*, Compl. ¶¶ 11–20, 32, 33–35 *with* Daou Compl. ¶¶ 1–10, 23, 37, 41–42.

DEFENDANT SEHNAOUI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

1    agreed to violate the rights of USD depositors from withdrawing their USD or

2    transferring USD outside Lebanon." *Id*. ¶ 28.

3        Even though the Plaintiffs "specifically advised Defendants that they needed

4    the ability to readily transfer their USD from Lebanon to their accounts in the

5    United States," *id*. ¶ 27, Defendants falsely told Plaintiffs that they could transfer

6    their deposited USD outside Lebanon, *id*. ¶ 29.  The Complaint provides no details

7    surrounding the alleged deposits of Plaintiffs' funds.

8        The Complaint collectively refers to the allegations set forth in Paragraphs

9    30 through 35 as the "Wrongful Conduct." *Id*. ¶¶ 28, 30–35. In those paragraphs,

10   the Complaint alleges, *inter alia*, that "Defendants conspired with each other to

11   make fraudulent representations to Plaintiffs," *id*. ¶ 32, that the Defendants

12   engaged in "unlawful conduct and participat[ed] in the Ponzi scheme," *id*. ¶ 33,

13   and that the Defendants "conspire[d] with other Lebanese commercial banks to

14   commit wire fraud and mail fraud in the United States," *id*. ¶ 34. The Wrongful

15   Conduct allegations of fraud and conspiracy and other fraud allegations are

16   expressly incorporated into each of the seven counts. *See, e.g.*, *id*. ¶¶ 42, 44–47

17   (Count 1); ¶¶ 50–55 (Count 2); ¶¶ 61–63 (Count 3), ¶¶ 65–66 (Count 4); ¶¶72–74,

18   77 (Count 5); ¶¶ 81–83 (Count 6); ¶¶ 87–90 (Count 7).

19       The Complaint further alleges that the Plaintiffs had $2.7 million "on deposit

20   in an SGBL bank account" by the end of 2019, and that, as a result of the alleged

21   withholding of funds, Plaintiffs were unable to complete business deals that would

22   have turned an approximately $8 million profit. *Id*. ¶¶ 30, 31. Elsewhere, the

23   Complaint alleges without support that the Defendants "caused Plaintiffs tens of

24   millions of dollars in damages above and beyond the stolen deposits." *Id*. ¶ 22.

25       The Complaint does not identify a single act taken by Sehnaoui toward the

26   Plaintiffs or involving the alleged conspiracy. Instead, the Complaint generally

27   alleges liability by Sehnaoui on an "alter ego" theory, by stating in conclusory

28   fashion that Sehnaoui, SGBL, PPNB, and Does 1 through 100 share "a unity of

interest" and that "separateness between them has ceased to exist[.]" *Id.* ¶ 8. The Complaint also fails to cite any specific representation made by any of the Defendants to the Plaintiffs. The one act it attributes to Sehnaoui personally is that, in order for SGBL to "amass USD deposits and to effectuate USD transactions," "Sehanoui [sic] privately purchased PPNB." *Id.* ¶ 25. The Complaint does not allege that the Plaintiffs had a PPNB bank account. Except for the allegation in Paragraph 25, the Complaint refers to the "Defendants" collectively, without identifying which of the over 100 Defendants committed any particular acts in furtherance of the alleged conspiracy and fraud scheme.

## 2. Service and Summons

On January 27, 2021, the Plaintiffs filed a Proof of Service of Summons ("Proof of Service") in the Superior Court. Dkt. 1-5 at 1. The Proof of Service stated that "substituted service" had been made on Sehnaoui at a Bethesda, Maryland address, upon an individual named "Rodgers abi-zuid" [sic]. *Id.* It also stated that the served individual was Sehnaoui's "co-resident," and that service was made at Sehnaoui's "home." *Id.* As described below, Sehnaoui lives abroad, has no residence in the United States, and service was not accepted by anyone. *See* Sehnaoui Decl. ¶¶ 3–4; Abi-Zeid Decl. ¶ 3. The individual who received the Complaint in Bethesda, Roger Abi-Zeid, objected to service by the process server, told the process server that Sehnaoui did not live at the residence, and had no authority to accept service. Abi-Zeid Decl. ¶ 3; Sehnaoui Decl. ¶ 7. On February 18, 2021, Abi-Zeid informed Plaintiffs' counsel of the inaccuracies in the Proof of Service. Abi-Zeid Decl. ¶ 5. To date, Plaintiffs' counsel has not corrected the record in either Superior Court or this Court. Plaintiffs have not filed Proofs of Service for either of the other two named defendants, and there is no record on the Superior Court docket of any attempt to serve those defendants.

### 3.  Removal

On February 19, 2021, Sehnaoui timely filed his notice of removal to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. Dkt. 1. *See* 18 U.S.C. § 1446(b)(1) (requiring notice to be filed within 30 days of service of the initial pleading from which removability can be ascertained).[2]  This Court has subject matter jurisdiction because, according to the Complaint's allegations, there is complete diversity between the Plaintiffs and Defendants and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), 1441(a); Notice of Removal, Dkt. 1 ¶¶ 6–21 (explaining in detail the basis for diversity jurisdiction).

## III.   ARGUMENT

### A. Sehnaoui Has Not Been Properly Served

A court cannot exercise jurisdiction over a defendant without proper service of process. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Rule 12(b)(5) of the Federal Rules of Civil Procedure permits a defendant to move for dismissal based on insufficient service of process. Fed. R. Civ. P. 12(b)(5). A defendant does not waive objections to service by removing an action to federal court. *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929); Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1082 (4th ed.), Service in Removed Actions. "The sufficiency of service on a defendant prior to removal from a state court is determined based upon state law." *Zehavi v. Reef*, No. 18-CV-06394-EJD, 2019 WL 917423, at *1 (N.D. Cal. Feb. 25, 2019).

Although defective service "may be completed or new process issued in the same manner as in cases originally filed in [federal court]," 28 U.S.C. § 1448, dismissal is a proper remedy where the plaintiff fails to properly serve a defendant post-removal in the manner prescribed by Rule 4 of the Federal Rules of Civil

---

[2] Sehnaoui removed within thirty days of the purported, though ineffective, service. As set forth in Part III.A *infra*, by doing so he did not waive his right of dismissal based on improper service.

Procedure. *See Gerena v. Korb*, 617 F.3d 197, 201–02 (2d Cir. 2010). If the plaintiff fails to do so, the "the court, upon motion or on its own initiative after notice of the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time." *Id.*

Here, service was purported to be made upon Sehnaoui in the state court action pursuant to California law. California provides a number of substitute options for service upon an individual in lieu of personal service. As relevant here, California Code of Civil Procedure § 415.20 provides that, if service cannot be made personally "with reasonable diligence," service may be effected:

> by leaving a copy of the summons and complaint at the person's dwelling house [or] usual place of abode . . . in the presence of a competent member of the household . . . who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by fist-class mail . . . to the person served[.]

Cal. Civ. Proc. Code § 415.20(b).

The Proof of Service states that service was made upon "Rodgers abi-zuid" at an address in Bethesda, Maryland. Dkt. 1-5 at 2. It further claims that "abi-zuid" (whose name is spelled Roger Abi-Zeid) is a "competent member of [Sehnaoui's] household" and that service was made "at the dwelling house or usual abode" of Sehnaoui. *Id.* There is no indication in the state court record that "reasonable diligence" was made to serve Sehnaoui personally.

Abi-Zeid is not a member of Sehnaoui's household. Abi-Zeid Decl. ¶ 4. Nor was Abi-Zeid "informed of the contents" of the summons and complaint. *Id.* When the process server handed Abi-Zeid the summons, Abi-Zeid objected, and stated that Sehnaoui did not live at that address. *Id.* The process server nevertheless instructed Abi-Zeid to accept the documents. *Id.*

Sehnaoui, for his part, has never lived in Maryland. Sehnaoui Decl. ¶ 2. It is unclear why Plaintiffs believed service was proper in Maryland. Since service has

DEFENDANT SEHNAOUI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

1  not been properly made upon Sehnaoui, the Court should dismiss the complaint as

2  to Sehnaoui if the Plaintiffs fail to properly serve him pursuant to the Federal Rules.

3  **B. The Complaint Must Be Dismissed for Lack of Personal**

4  **Jurisdiction**

5  Even if service were proper, or proper service is ever effectuated, the

6  Plaintiffs do not state a *prima facie* case of personal jurisdiction because the

7  Complaint's allegations fail to show Sehnaoui has a presence in or an affiliation

8  with California, or that he engaged in conduct directed at California related to this

9  lawsuit. *See* Fed. R. Civ. P. 12(b)(2).

10  "Federal courts ordinarily follow state law in determining the bounds of their

11  jurisdiction over persons." *Daimler AG v. Bauman*, 571 U. S. 117, 125 (2014).

12  California has authorized its courts to exercise jurisdiction over persons "on any

13  basis not inconsistent with the Constitution." Cal. Code Civ. Proc § 410.10.

14  Therefore, to determine whether personal jurisdiction exists over Sehnaoui, the

15  exercise of jurisdiction must "comport[] with the limits imposed by federal due

16  process." *Daimler*, 571 U.S. at 125.

17  Under federal due process principles, "the nonresident generally must have

18  certain minimum contacts . . . such that the maintenance of the suit does not offend

19  traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S.

20  277, 283 (2014) (internal quotation marks omitted). In this regard, the Supreme

21  Court has recognized two distinct types of personal jurisdiction based on the nature

22  and extent of a defendant's contacts with the forum. "General" jurisdiction permits

23  a court to assert jurisdiction over a defendant based on a forum connection

24  unrelated to the underlying suit, such as domicile. *Milliken v. Meyer*, 311 U.S. 457,

25  463–64 (1940). In contrast, under "specific" or "case-linked" jurisdiction, "there

26  must be an affiliation between the forum and the underlying controversy,

27  principally [an] activity or an occurrence that takes place in the forum State and is

28  therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior*

*Court*, 137 S. Ct. 1773, 1780 (2017) (quotation marks omitted). To confer specific jurisdiction consistent with due process, a defendant's "suit-related conduct" must create a "substantial connection with the forum State." *Walden*, 571 U.S. at 284.

### 1. The Complaint's Allegations Fail to Establish General or Specific Personal Jurisdiction over Sehnaoui

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "[C]ontacts with California generally are not enough to establish personal jurisdiction." *Bondit LLC v. Hallows Movie Inc.*, No. 2:19-CV-09832-SB-RAO, 2020 WL 7775619, at *3 (C.D. Cal. Nov. 23, 2020) (Blumenfeld, J.). The Plaintiffs concede that Sehnaoui is not a resident of California, and incorrectly state that he is a resident of Maryland. Compl. ¶ 5. Sehnaoui is a citizen and resident of Lebanon, and not a resident of the United States. Sehanoui Decl. ¶¶ 3–4. That alone destroys any claim of general jurisdiction over Sehnaoui. The Complaint's allegations that Sehnaoui previously attended school in California or the "boilerplate allegation[]" that he "continues to enjoy the benefits of the laws and resources" of California are insufficient, without more, to make him "essentially at home" in the state. *Id.* (citing *Goodyear*, 564 U.S. at 919).

Nor can Plaintiffs show specific jurisdiction. To exercise specific personal jurisdiction consistent with due process, courts examine "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284. Most fundamentally, "the relationship must arise out of contacts that the defendant himself" creates with the forum state, *id.* (quotation marks omitted); it cannot be based on another defendant's forum contacts, *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783–84. In addition, the plaintiff cannot be the only link between the defendant and the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 ("If the question is whether an individual's contract with an out-of-state party alone can

automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U. S. at 285; *see id.* at 286 (observing "[t]hese same principles apply [to] intentional torts[.]").

The Complaint fails this test because it does not plead facts sufficient to show that Sehnaoui personally engaged in any "suit-related conduct" that could create "a substantial connection with the forum State." *Id.* at 284. Nor do Plaintiffs allege that Sehnaoui ever traveled or conducted activities within California related to the lawsuit, or, for that matter, personally took any action that had anything to do with Plaintiffs themselves. To the extent that the Complaint allegations lump together the 100 plus defendants, it is utterly implausible to infer that Sehnaoui, as Chairman of SGBL, personally "sent bank statements" and issued "debit and credit cards" to anyone, in California or otherwise. Compl. ¶ 9. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

Even if the Complaint alleged relevant actions taken personally by Sehnaoui—which is does not—there is no allegation that he took them in his personal, rather than official, capacity. For this reason alone, the Complaint fails as a matter of law to establish personal jurisdiction over Sehnaoui. *See Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) (Baird, J.) ("For jurisdictional purposes, the acts of corporate officers . . . are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals. . . . Accordingly, acts performed by these individuals, in their official capacities, cannot reasonably be attributed to them as individual acts creating personal jurisdiction.").  As for Plaintiffs' final basis for personal jurisdiction, that they "were harmed in this state," Compl. ¶ 9, it is

DEFENDANT SEHNAOUI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

unavailing because the "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290.

In fact, a fair reading of the Complaint makes plain that none of Plaintiffs' allegations—for example, conspiratorial conduct by unnamed Lebanese banks as part of the Lebanese financial system, nationwide fiscal determinations made by the BDL, including the limitation of wiring U.S. dollars abroad, or any alleged decision or action by any Defendant in this case—had anything to do with California itself. Application of well-established principles therefore shows the exercise of personal jurisdiction over Sehnaoui would violate due process.

## 2.  The Complaint Fails to Allege Facts Sufficient to Warrant Application of the "Alter Ego" Doctrine

The Complaint eschews any specific or relevant allegations involving Sehnaoui's personal actions toward Plaintiffs in California. Instead, it relies upon an "alter ego" theory of liability to claim that the alleged collective actions of SGBL, PPNB, and Does 1 through 100 should be imputed to Sehnaoui. *See* Compl. ¶ 8. The entire allegation in support of this theory is described in Paragraph 8, which states:

> Plaintiffs are informed and believe that through such common ownership, SGBL, PPNB, and Sehanoui [sic] are, and at all times relevant were, alter egos of one another. There exists a unity of interests in ownership between Defendants such that any separateness between them has ceased to exist in that Sehanoui [sic] (and the other common owners) completely controlled, dominated, managed, and operated the other Defendants to suit their convenience. Therefore, each of such named or fictitiously named defendants are responsible in some manner to pay the obligations described herein and that Plaintiffs' losses as herein alleged were proximately caused by Defendants' acts.

*Id*. This attempt to invoke alter ego liability—either for the purpose of exercising personal jurisdiction over Sehnaoui or to establish substantive liability against him

-11-

Case No. 8:21-cv-00335-CJC-KES

DEFENDANT SEHNAOUI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

personally—is specious. No federal court would permit the exercise of jurisdiction or find a plausible claim against an officer of a United States bank based on such sparse allegations, and there is no reason that an officer of a foreign-owned bank should be treated differently in that regard.

In assessing whether a complaint adequately alleges alter ego liability for state law claims, federal courts apply the law of the forum state. *Wolfe v. United States*, 798 F.2d 124, 1244 n.3 (9th Cir. 1986), *cert denied*, 482 U.S. 927 (1987). When alter ego claims "are based on allegations of fraud, . . . the heightened pleading standard of Rule 9(b) is the lens through which those allegations must be examined." *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003). Although all seven counts against Sehnaoui sound in fraud, *see infra* Part D, the conclusory allegations supporting the Complaint's alter ego theory are insufficient whether assessed under Rule 9(b) or the notice pleading standard set out in Rule 8(b). *See* Fed. R. Civ. P. 9(b); 8(b).

Under California law, alter ego liability requires two showings: "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 526 (2000); *see also S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003).

"The purpose of the doctrine is to bypass the corporate entity for the purpose of avoiding injustice. Its essence is that justice be done, and thus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003) (Morrow, J.) (quotation marks and alterations omitted). The elements of alter ego liability and facts supporting each element must be specifically alleged. *Id.* Conclusory allegations of "alter ego" status are

insufficient to state a claim. *Id.* at 1116; *accord Mililani Grp., Inc. v. O'Reilly Auto., Inc.*, 621 Fed. App'x 436, 436 (9th Cir. 2015) (affirming dismissal based on "conclusory allegation" of an "inequitable result"); *In re Currency*, 265 F. Supp. 2d at 426 ("These purely conclusory allegations cannot suffice to state a claim based on . . . alter-ego liability, even under the liberal notice pleading standard").

The Complaint is completely devoid of any specific and factual allegations that could sustain an alter ego theory of liability. With respect to the first element— a unity of ownership or interest—the Complaint merely alleges that Sehnaoui is the "chairman of the board of SBGL, as well as the owner and chairman of PPNB," then skips to the conclusion that "Sehnaoui (and the other common owners) completely controlled, dominated, managed, and operated the other Defendants to suit their convenience." Compl. ¶ 8. Such generalized assertions that defendants "exercised dominion and control" over one another and shared common ownership are precisely the type of "purely conclusory allegations" that "cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard." *In re Currency*, 265 F. Supp. 2d at 426. Indeed, if the mere allegation that a person shared ownership of another defendant, or was employed by a defendant, sufficed to establish alter ego liability, then the "narrowly defined circumstances," *Neilson*, 290 F. Supp. 2d at 1115, would encompass almost any lawsuit involving employee-employer co-defendants or those with overlapping financial interests.

With respect to the second element, the Complaint does not describe how "an inequitable result" will follow "if the acts in question are treated as those of [SGBL and PPNB] alone." *Sonora Diamond*, 83 Cal. App. 4th at 537. In the

absence of the type of specific allegations that are required to impute alter ego liability to Sehnaoui, the entire Complaint must be dismissed as to him.[3]

### C. The Complaint Fails to Plead the Fraud Allegations in All Seven Counts with Particularity, as Required by Rule 9(b)

All seven counts in the Complaint specifically incorporate fraud allegations, either by express reference to the "Wrongful Conduct" paragraphs, descriptions of a "Ponzi scheme," or both. *See, e.g.*, Compl. ¶¶ 42, 44–47 (Count 1); ¶¶ 50–55 (Count 2); ¶¶ 61–63 (Count 3), ¶¶ 65–66 (Count 4); ¶¶72–74, 77 (Count 5); ¶¶ 81–83 (Count 6); ¶¶ 87–90 (Count 7). In the Ninth Circuit, courts apply Rule 9(b)'s heightened pleading standard to state law claims that technically lack fraud as an element when those claims are "grounded" in fraud. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 n.17 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 223 (2019) (because complaint relied "on a 'unified course of fraudulent conduct,'" the claims were "'grounded in fraud' and therefore 'must satisfy the particularity requirement of Rule 9(b) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) is a "federally imposed rule" and applies "irrespective of whether the substantive law at issue is state or federal."); *accord Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950, 979 (C.D. Cal. 2015) (Fitzgerald, J.) (explaining that California Business and Professions Code § 17200 *et seq.* claims grounded in fraud must satisfy Rule 9(b)).

Under Rule 9(b), a plaintiff "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

---

[3] Even assuming Plaintiffs could plead facts sufficient to support an alter ego theory, it still would not confer personal jurisdiction over Sehnaoui because the Complaint likewise fails to show either SGBL or PPNB is subject to general or specific personal jurisdiction in California. *Daimler*, 571 U.S. at 125; *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783–84.

"To satisfy Rule 9(b)'s particularity requirement, the complaint must include an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Depot, Inc.*, 915 F.3d at 668 (quotation marks omitted). This means that a complaint "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quotation marks omitted).

Where fraud is alleged against multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but requires plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quotation marks and alterations omitted); *see also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (same). "Conclusory allegations that [a defendant] knew [other defendants] were making false statements to clients . . . , and thus were acting in concert" with those defendants and were "active participants in the conspiracy without any stated factual basis are insufficient as a matter of law." *Swartz*, 476 F.3d at 765 (internal quotation marks omitted).

The Complaint does not meet any of the foregoing requirements of Rule 9(b). It broadly states that "Defendants solicited Plaintiffs" to make deposits into an SGBL account, issued Plaintiffs debit and credit cards, and "promised Plaintiffs high interest rates on their USD deposits to induce Plaintiffs to make the deposits." Compl. ¶¶ 9, 24. In making this allegation, the Complaint is silent as to "the names of the persons who made the allegedly fraudulent representations, their authority to speak, . . . what they said or wrote, and when it was said or written." *Flowers v. Wells Fargo Bank, N.A.*, No. C 11–1315 PJH, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011); *Salameh*, 726 F.3d at 1133. The Complaint also makes no attempt

to differentiate among the Defendants. *Swartz*, 476 F.2d at 764. Indeed, it does not

any act taken by Sehnaoui in furtherance of the alleged conspiracy, except that

"Sehanoui [sic] personally purchased PPNB." The Complaint does not even state

whether the alleged fraudulent representations were made in orally or in writing.

Likely as a result of the Complaint being largely copied word-for-word from

an unrelated lawsuit in the Southern District of New York, many of the fraud

allegations actually involve *other* parties with no explained relationship to the

Defendants. *See, e.g.*, Compl. ¶ 14 ("Lebanese banks lured investments of USD by

fraudulently representing to depositors that they would earn exceedingly high

interest rates . . . ."); ¶ 21 ("Defendants . . . were among the chief perpetrators of

the Ponzi scheme [the Central Bank of Lebanon] designed"). Such sweeping

allegations are not "specific enough to give defendants notice of the particular

misconduct that is alleged to constitute the fraud so that they can defend against

the claim." *Flowers*, 2011 WL 2748650 at *6. Because it fails to satisfy Rule 9(b),

the Complaint must be dismissed as to Sehnaoui.

### D. The Complaint Fails to State a Claim upon Which Relief May Be Granted

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is

proper when a complaint "lack[s] a cognizable legal theory" or there is an "absence

of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica

Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A court must accept factual

allegations as true and draw all reasonable inferences from them in favor of the

nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38

(9th Cir. 1996). However, "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of a cause of action's elements will not do. Factual allegations must be

enough to raise a right to relief above the speculative level on the assumption that

all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 545 (2007) (quoting Fed. R. Civ. P. 12(b)(6)). While courts should liberally grant leave to amend a dismissed complaint, they need not do so if the deficiency cannot be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

### 1. The Economic Loss Rule Requires Dismissal of All Seven Counts

The Complaint alleges six torts in Count One through Six, and then repeats the earlier allegations in Count Seven, which alleges a violation of California Business and Professions Code § 17200. Each Count simply repackages the General Allegations, including the Wrong Conduct, using similar or identical language. The Counts are all grounded in an allegation of promissory fraud: that the Defendants lured the Plaintiffs to deposit their money in an SGBL account with the promises that the Plaintiffs would receive high interest rates, Compl. ¶ 24, and could withdraw dollars in the United States, *id*. ¶ 29. The Complaint alleges that these representations were knowingly false when made. *E.g.*, *id*. ¶¶ 24, 28.

Under California's economic loss rule, "purely economic losses are not recoverable in tort." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (Morrow, J.) (quotation marks omitted). The rule encompasses allegations of promissory fraud. *Audigier Brand Management v. Perez*, No. CV 12–5687–CAS (RZx), 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012) (Snyder, J.). The doctrine "is designed to maintain a distinction between damage remedies for breach of contract and for tort. The term 'economic loss' refers to damages that are solely monetary, as opposed to damages involving physical harm to person or property." *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007) (citation omitted). Torts such as negligent misrepresentation, where "the purportedly negligent conduct is conceptually indistinct from a contract breach," are subject to the economic loss rule. *UMG Recordings*, 117 F. Supp. 3d at 1105. Additionally, the economic loss

rule requires plaintiff alleging a tort to identify a duty outside of the alleged contractual relationship that enables a suit in tort. *Id.* at 1104. In this manner, the rule prevents plaintiffs from dressing up a contract claim as a tort.

The economic loss rule is fatal to all seven Counts for two reasons. First, the Complaint claims only economic damages arising from alleged broken promises, and the lost business opportunities that allegedly followed. *See, e.g.*, Compl. ¶¶ 31, 45, Prayer for Relief. Second, the Complaint fails to identify any duty owed by the Defendants—including Sehnaoui—to the Plaintiffs, other than ostensibly contractual duties arising from the Defendants' alleged promise of high interest rates on Plaintiffs' deposits, *id.* ¶ 24, and their representations that Plaintiffs "could transfer their USD outside Lebanon," *id.* ¶ 29. All of the "duties" identified in the Complaint relate directly to the performance of SGBL's alleged promises of high interest rates and ability to withdraw funds in U.S. dollars. *See, e.g.*, *id.* ¶ 39 (listing the duties to "conduct themselves . . . in a manner consistent with the level of competence . . . normally imposed upon bank agents" and to "protect Plaintiffs' account"). Read in its entirety, the Complaint amounts to "nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *JMP Securities LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012). Accordingly, the Complaint must be dismissed as a matter of law because it "lacks a cognizable legal theory" to recover on any of the seven Counts. *Balisteri*, 901 F.2d at 699.

## 2. Additional Pleading Deficiencies

In addition to the above-described pleading deficiencies that apply to all seven Counts, Counts One and Two should be dismissed because the torts of negligent and intentional interference with prospective economic relations require knowledge of the existence of the economic relationship with which the defendant interferes. *See North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 786; *Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1305

(C.D. Cal. 1996) (Pregerson, J.). The Complaint fails to plausibly plead that any of the Defendants, let alone Sehnaoui personally, knew of the Plaintiffs' plans for the Laguna Niguel or Over Easy projects in Laguna Niguel, California, and Scottsdale, Arizona. Compl. ¶¶ 31, 38. It defies both "context" and "common sense," *Iqbal*, 556 U.S. at 679, to conclude, without any supporting allegations, that the third largest bank in Lebanon—or its Chairman—was somehow aware of the U.S. business plans of its depositors. Kabengi Decl. ¶ 5. Because a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inference," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001), Counts One and Two should be dismissed.

## IV.     The Court Should Dismiss the Complaint with Prejudice

Although in general courts liberally grant leave to amend a dismissed complaint, they need not do so where amendment would be futile. *Lopez*, 203 F.3d at 1130. The Complaint's defects go to the heart of the allegations against Sehnaoui: fraud claims that lack an iota of particularity, alter ego claims that do not even attempt to meet the required elements for such a showing, an absence of allegations establishing personal jurisdiction over Sehnaoui in California, and the applicability of the economic loss rule that extinguishes all seven counts as a matter of law. Worse, the Plaintiffs have not even bothered attempting to serve the corporate defendants, and they misrepresented the facts of service on Sehnaoui to the state court, then failed to correct the record. Finally, the fact that the Complaint simply copy-and-pasted large portions of a lawsuit filed by other lawyers in New York raises significant questions as to whether the investigation by Plaintiffs' counsel preceding the filing of the Complaint was sufficient to satisfy basic standards of diligence required by members of the bar in any U.S. court or jurisdiction. Under this combination of circumstances, there is no reason to believe

that an amendment by these Plaintiffs would be anything but futile, and the Court should dismiss the Complaint without granting leave to amend.

Alternatively, prior to granting any leave to amend, the Court should require the Plaintiffs to include in their opposition to this Motion to Dismiss a Proposed Amended Complaint that at least attempts to fill the gaping legal holes in the original Complaint. *See Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 650 (9th Cir. 1984) (employing such a procedure).

## V.    CONCLUSION

Sehnaoui respectfully requests that the Court dismiss the Complaint with prejudice.


DATED:  February 26, 2021

Respectfully Submitted,
BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Thomas P. O'Brien

By:        /s/ Thomas P. O'Brien
Thomas P. O'Brien
Attorneys for Defendant Antoun Sehanoui

DEFENDANT SEHNAOUI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT