BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Thomas P. O'Brien (State Bar No. 166369)
    tobrien@bgrfirm.com
Luke A. Fiedler (State Bar No. 307614)
    lfiedler@bgrfirm.com
801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808

Michael J. Sullivan (BBO No. 487210)
    msullivan@ashcroftlawfirm.com
ASHCROFT LAW FIRM
200 State St., 7th Floor, Boston, MA 02109
Telephone: (617) 573-9400
Facsimile: (617) 933-7607
*(pro hac vice)*

Attorneys for Defendant *Société Générale de
Banque au Liban, S.A.L.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE DAOUD, an individual, and JOUMANA DAOUD, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN, S.A.L., a Société Anonyme Libanaise; ANTOUN SEHNAOUI, an individual; PIKES PEAK NATIONAL BANK, an unknown entity, and DOES 1-100, inclusive, <br><br> Defendants. | Case No. 8:21-cv-000335-CJC-KES <br><br> **DEFENDANT SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN, S.A.L.'s NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT** <br><br> Judge: Hon. Cormac J. Carney <br> Date:   May 17, 2021 <br> Time:  1:30 p.m. <br> Crtrm: 9B |

1798999.2

**TO THE HONORABLE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE** that on May 17, 2021, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 9B of the Ronald Reagan Federal Building and United States Courthouse, before the Honorable Cormac J. Carney, Defendant Société Générale de Banque au Liban, S.A.L., will and hereby does move to dismiss the following claims asserted by Plaintiffs Antoine Daoud and Joumana Daoud: (1) negligent interference with prospective economic relations; (2) intentional interference with prospective economic relations; (3) misappropriation; (4) negligence; (5) intentional misrepresentation; (6) negligent misrepresentation; (7) violation of Business and Professions Code § 17200.

This motion is made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(2), and 12(b)(6). This motion is based on this notice, the attached memorandum of points and authorities, the attached declarations, the Court's file in this action, and any further evidence or argument presented at a hearing on this motion. Furthermore, this motion is made following the conference of counsel pursuant to Local Rule 7-3, which initially took place by email beginning on April 9, 2021, and continued with a phone conference on April 12, 2021.

DATED: April 16, 2021

Respectfully Submitted,
BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Thomas P. O'Brien

By: /s/ Thomas P. O'Brien
Thomas P. O'Brien

Attorney for Defendant Société Générale de Banque au Liban, S.A.L.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ............................................................................................... 1

II.  BACKGROUND ................................................................................................ 1

   A.  Plaintiffs ..................................................................................................... 1

   B.  Defendants ................................................................................................... 1

      1.    Société Générale De Banque Au Liban, S.A.L. .................................. 1

      2.    Antoun Sehnaoui .................................................................................. 2

      3.    Pikes Peak National Bank .................................................................... 2

      4.    Does 1 through 100, inclusive .............................................................. 2

   C.  Procedural History ..................................................................................... 3

      1.    The Complaint ...................................................................................... 3

      2.    Removal ................................................................................................ 5

      3.    Dismissal of Complaint Against Sehnaoui ........................................... 5

      4.    Order to Show Cause ............................................................................ 5

III. ARGUMENT ..................................................................................................... 6

   A.  The Complaint Must Be Dismissed for Lack of Personal Jurisdiction ........... 6

      1.    The Complaint's Allegations Fail to Establish General Jurisdiction over SGBL ................................................................................................... 7

      2.    The Complaint's Allegations Fail to Establish Specific Jurisdiction over SGBL ................................................................................................... 8

      3.    The Complaint Fails to Allege Facts Sufficient to Warrant Application of the "Alter Ego" Doctrine ................................................................... 10

   B.  The Complaint Fails to Plead the Fraud Allegations in All Seven Counts with Particularity, as Required by Rule 9(b) ................................................... 13

C.  The Complaint Fails to State a Claim upon Which Relief May Be Granted.15

    1.    The Economic Loss Rule Requires Dismissal of All Seven Counts ....... 16

    2.    Additional Pleading Deficiencies ............................................................ 17

IV. The Court Should Dismiss the Complaint with Prejudice ................................ 18

V.  CONCLUSION .................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
  121 F. Supp. 3d 950 (C.D. Cal. 2015) ................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................18

*Audigier Brand Management v. Perez*, No. CV 12–5687–CAS (RZx), 2012 WL
  5470888 (C.D. Cal. Nov. 5, 2012) ........................................................................16

*Balisteri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1988) ..........................................................................15, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................16

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ..................................................................................6

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) ..........................................................................7, 8, 10, 13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..................................................................................................8

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) ....................................................................................15

*Daimler AG v. Bauman*,
  571 U. S. 117 (2014) ....................................................................................6, 7, 13

*Daou v. BLC Bank, S.A.L.*,
  No. 1:20-cv-4438 (S.D.N.Y. June 10, 2020) ..........................................................3

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) ....................................................................................9

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) ............................................................................13, 14

# TABLE OF AUTHORITIES
### (Continued)

*Destfino v. Reiswig*,

    630 F.3d 952 (9th Cir. 2011)............................................................................14

*Flowers v. Wells Fargo Bank, N.A.*,

    No. C 11–1315 PJH, 2011 WL 2748650 (N.D. Cal. July 13, 2011) .............14, 15

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,

    141 S. Ct. 1017 (2021) .......................................................................................8

*Giles v. General Motors Acceptance Corp.*,

    494 F.3d 865 (9th Cir. 2007)............................................................................16

*Greystone Hous. Found., Inc. v. Fantasy Holdings, LLC*,

    No. 16-CV-0300-AJB-DHB, 2016 WL 11621591 (S.D. Cal. May 19, 2016) 7,8,9

*In re Currency Conversion Fee Antitrust Litig.*,

    265 F. Supp. 2d 385 (S.D.N.Y. 2003)..........................................................11, 12

*JMP Securities LLP v. Altair Nanotechnologies Inc.*,

    880 F. Supp. 2d 1029 (N.D. Cal. 2012) ...........................................................17

*Jones v. Cmty. Redevelopment Agency of City of Los Angeles*,

    733 F.2d 646 (9th Cir. 1984)............................................................................19

*Kearns v. Ford Motor Co.*,

    567 F.3d 1120 (9th Cir. 2009)..........................................................................13

*Lopez v. Smith*,

    203 F.3d 1122 (9th Cir. 2000)....................................................................16, 18

*Mililani Grp., Inc. v. O'Reilly Auto., Inc.*,

    621 Fed. App'x 436 (9th Cir. 2015).............................................................11, 12

*Milliken v. Meyer*,

    311 U.S. 457 (1940).............................................................................................7

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

*Neilson v. Union Bank of California, N.A.*,

  290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................................11, 12

*North American Chemical Co. v. Superior Court*,

  59 Cal. App. 4th 764 (1997)..................................................................................18

*Panavision Int'l, L.P. v. Toeppen*,

  945 F. Supp. 1296 (C.D. Cal. 1996) ....................................................................18

*Rocawear Licensing LLC v. Pacesetter Apparel Grp.*,

  No. CV 06-3093-CJC (CWx), 2007 WL 5289737 (C.D. Cal. Sept. 12, 2007) .....9

*S.E.C. v. Hickey*,

  322 F.3d 1123 (9th Cir. 2003)...............................................................................11

*Salameh v. Tarsadia Hotel*,

  726 F.3d 1124 (9th Cir. 2013)........................................................................14, 15

*Schwarzenegger v. Fred Martin Motor Co.*,

  374 F.3d 797 (9th Cir. 2004).................................................................................. 7

*Sonora Diamond Corp. v. Superior Court*,

  83 Cal. App. 4th 523 (2000)...........................................................................11, 12

*Sprewell v. Golden State Warriors*,

  266 F.3d 979 (9th Cir. 2001)..................................................................................18

*Swartz v. KPMG LLP*,

  476 F.3d 756 (9th Cir. 2007)........................................................................14, 15

*Taubler v. Giraud*,

  655 F.2d 991 (9th Cir.1981)................................................................................... 9

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,

  117 F. Supp. 3d 1092 (C.D. Cal. 2015) .........................................................16, 17

# TABLE OF AUTHORITIES
### (Continued)

*Vess v. Ciba-Geigy Corp. USA*,

  317 F.3d 1097 (9th Cir. 2003).................................................................13

*Walden v. Fiore*,

  571 U.S. 277 (2014) ............................................................6, 7, 8, 10

*Wolfe v. United States*,

  798 F.2d 124 (9th Cir. 1986)..............................................................11

**Statutes**

28 U.S.C. §1441.......................................................................................5

18 U.S.C. § 1446(b)(1) ...........................................................................5

28 U.S.C. §1332.......................................................................................5

**Other Authorities**

Business and Professions Code § 17200 ...................................3, 13, 16

Cal. Code Civ. Proc. § 410.10 ................................................................6

**Rules**

Fed. R. Civ. P. 8(b)................................................................................11

Fed. R. Civ. P. 9(b)..........................................................................passim

Fed. R. Civ. P. 12(b)(2) ..........................................................................6

Fed. R. Civ. P. 12(b)(6) ...................................................................15, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this removed lawsuit, the Plaintiffs claim—without any supporting factual allegations—that they were victimized by an international conspiracy perpetrated by the entire Lebanese banking system, including the Banque du Liban ("BDL"), the central bank and regulatory authority for all banks in Lebanon. Plaintiffs contend that those entities—together with Defendant Société Générale De Banque Au Liban, S.A.L. ("SGBL")—enticed them into opening an unknown number of Lebanese retail bank accounts with unspecified high interest rates, only to later intentionally impose monetary policies (apparently using Lebanon's current highly-publicized fiscal crisis as subterfuge) to prevent them from wiring funds to the United States in U.S. dollars. In lieu of describing a single specific transaction, communication, or other conduct taken by SGBL in California or elsewhere, the Complaint's fanciful and generalized allegations appear to have largely been copied word-for-word from an unrelated lawsuit brought last year by other lawyers in the Southern District of New York.

For the reasons that follow, the Complaint should be dismissed as to SGBL for lack of personal jurisdiction, insufficient allegations to support a fraud claim under Rule 9(b), and failure to state a claim due to the economic loss rule and other basic legal principles.

## II.  BACKGROUND

### A. Plaintiffs

According to the Complaint, Plaintiffs are two individuals who reside in Orange County, California. Compl. ¶¶ 1–2.

### B. Defendants

#### 1.  Société Générale De Banque Au Liban, S.A.L.

SGBL is a Lebanese joint stock company headquartered in Lebanon. Compl. ¶ 3. As the third largest commercial bank in Lebanon, SGBL offers

banking and financial services to individuals and corporations in Lebanon and neighboring countries.  Declaration of Jeanine Kabengi ("Kabengi Decl.") ¶ 5. SGBL is organized under and subject to the laws of Lebanon, and is regulated by the BDL, which has regulatory authority over all banks in Lebanon. *Id.* ¶ 4. SGBL is not incorporated, licensed, registered as a foreign corporation, or otherwise authorized to conduct business anywhere in the United States. *Id.* ¶ 6. SGBL has no subsidiaries, offices, branches, employees, directors, or officers in California or elsewhere in the United States. *Id.* at 7–8, 10.

### 2.  Antoun Sehnaoui

Sehnaoui is the Chairman of SGBL. Declaration of Antoun Sehnaoui ("Sehnaoui Decl.") ¶ 5.  He is also the Chairman of PPNB, *id.* ¶ 5, a separate bank. Sehnaoui is a citizen and resident of Lebanon. *Id.* ¶ 4. He is not a resident of the United States. *Id.* ¶ 3. The Complaint incorrectly states that Sehnaoui "resides in Bethesda, Maryland." Compl. ¶ 5.  The day after Sehnaoui filed his Motion to Dismiss, Dkt. 10, the Plaintiffs voluntarily dismissed the Complaint as to Sehnaoui, Dkt. 11.

### 3.  Pikes Peak National Bank

The Complaint states that PPNB "is an unknown entity with its headquarters in Colorado Springs, Colorado," and that "it is a privately held bank and a member of the Federal Deposit Insurance Corporation." Compl. ¶ 4. The Complaint does not allege that PPNB has any presence in California.

### 4.  Does 1 through 100, inclusive

The Complaint lists as Defendants "Does 1 through 100, inclusive." *Id.* ¶ 7. It states that "Plaintiffs are informed and believe and based thereon allege that each of such fictitious named defendants are responsible in some manner or status to pay the obligations described herein and that Plaintiffs' losses as herein alleged were proximately caused by Defendants' acts." *Id.* No acts, statements, or omissions are attributed specifically to these 100 Defendants in the Complaint.

### C. Procedural History

#### 1. The Complaint

On December 16, 2020, Plaintiffs filed their Complaint in Orange County Superior Court. *Id*. ¶ 1. The Complaint alleges seven state law claims against all three defendants, including (1) negligent interference with prospective economic relations, (2) intentional interference with prospective economic relations, (3) misappropriation, (4) negligence, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) violation of Business and Professions Code § 17200. The seven Counts all arise from an alleged retail banking relationship between the Plaintiffs (as depositors) and SGBL.

The Complaint's "General Allegations," which are largely copied word-for-word from an unrelated lawsuit involving different parties and lawyers in the Southern District of New York,[1] describe a wide-ranging conspiracy and "Ponzi scheme" by which SGBL and other banks colluded with the BDL (*i.e.*, Lebanon's equivalent of the U.S. Federal Reserve System) to "lure[] investments of USD by fraudulently representing to depositors that they would earn exceedingly high interest rates while still having ready access to their USD." *Id*. ¶ 14. According to the Complaint, the Defendants, "among other Lebanese banks, . . . collusively agreed to violate the rights of USD depositors from withdrawing their USD or transferring USD outside Lebanon." *Id*. ¶ 28.

Even though the Plaintiffs "specifically advised Defendants that they needed the ability to readily transfer their USD from Lebanon to their accounts in the United States," *id*. ¶ 27, Defendants falsely told Plaintiffs that they could transfer their deposited USD outside Lebanon, *id*. ¶ 29.  The Complaint provides

---

[1] *See Daou v. BLC Bank, S.A.L.*, No. 1:20-cv-4438, Dkt. 1 (S.D.N.Y. June 10, 2020) ("Daou Complaint"). *Compare, e.g.*, Compl. ¶¶ 11–20, 32, 33–35 *with* Daou Compl. ¶¶ 1–10, 23, 37, 41–42.  On April 9, 2021, the court in that matter granted all defendants' motions to dismiss the entire complaint. Dkt. 97 (Apr. 9, 2021, Op. and Order).

1798999.2

no details surrounding the alleged deposits of Plaintiffs' funds.  It does not describe the date or method of transmission of any communication between any Defendant—including SGBL—and Plaintiffs.

The Complaint collectively refers to the allegations set forth in Paragraphs 30 through 35 as the "Wrongful Conduct." *Id*. ¶¶ 28, 30–35. In those paragraphs, the Complaint alleges, *inter alia*, that "Defendants conspired with each other to make fraudulent representations to Plaintiffs," *id*. ¶ 32, that the Defendants engaged in "unlawful conduct and participat[ed] in the Ponzi scheme," *id*. ¶ 33, and that the Defendants "conspire[d] with other Lebanese commercial banks to commit wire fraud and mail fraud in the United States," *id*. ¶ 34. The Wrongful Conduct allegations of fraud and conspiracy and other fraud allegations are expressly incorporated into each of the seven counts. *See, e.g.*, *id*. ¶¶ 42, 44–47 (Count 1); ¶¶ 50–55 (Count 2); ¶¶ 61–63 (Count 3), ¶¶ 65–66 (Count 4); ¶¶72–74, 77 (Count 5); ¶¶ 81–83 (Count 6); ¶¶ 87–90 (Count 7).

The Complaint further alleges that the Plaintiffs had $2.7 million "on deposit in an SGBL bank account" by the end of 2019, and that, as a result of the alleged withholding of funds, Plaintiffs were unable to complete business deals that would have turned an approximately $8 million profit. *Id*. ¶¶ 30, 31. Elsewhere, the Complaint alleges without support that the Defendants "caused Plaintiffs tens of millions of dollars in damages above and beyond the stolen deposits." *Id*. ¶ 22.

The Complaint fails to cite any specific representation made by any of the Defendants to the Plaintiffs, in California or elsewhere.  It generally alleges that the Defendants "solicited Plaintiffs . . . [and] numerous other California residents" to make deposits in unidentified banks, that the Defendants "continuously sent bank statements and emails and directed telephone calls to Plaintiffs in California," and that the Defendant "issued Plaintiffs debit and credit cards to be used in California[.]"  *Id*. ¶ 8.  In making these jurisdictional

allegations, the Complaint refers to the "Defendants" collectively, without identifying which of the over 100 Defendants committed any particular acts in furtherance of the alleged conspiracy and fraud scheme.  The Complaint does not specify any date or the content of any of the solicitations or communications that are alleged to have been by the Defendants directed at California.

### 2.  Removal

On February 19, 2021, Sehnaoui timely filed his notice of removal to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. Dkt. 1. *See* 18 U.S.C. § 1446(b)(1) (requiring notice to be filed within 30 days of service of the initial pleading from which removability can be ascertained).[2]  This Court has subject matter jurisdiction because, according to the Complaint's allegations, there is complete diversity between the Plaintiffs and Defendants and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), 1441(a); Notice of Removal, Dkt. 1 ¶¶ 6–21 (explaining in detail the basis for diversity jurisdiction).

### 3.  Dismissal of Complaint Against Sehnaoui

On February 26, 2021, Sehnaoui filed a Motion to Dismiss Complaint. Dkt. 10.  On February 27, 2021, Plaintiffs voluntarily moved to dismiss the complaint against Sehnaoui only.  Dkt. 11.

### 4.  Order to Show Cause

On March 25, 2021, this Court issued an Order to Show Cause Re Dismissal for Lack of Prosecution.  Dkt. 14.  The Court ordered Plaintiffs to show cause why the action should not be dismissed for lack of service, since more than 90 days had passed since the Complaint had been filed.  *Id.*  The Court noted that service was due to occur by March 16, 2021. *Id.*

On April 1, 2021, Plaintiffs filed a Declaration of Marc Lazo in Response to Order to Show Cause Re Dismissal for Lack of Prosecution.  Dkt. 17.  With

---

[2] Sehnaoui removed within thirty days of the purported, though ineffective, service.

regard to SGBL, the Declaration stated that "we learned from our office's process server that the delay in serving [SGBL] was due to the process server's inability to gain access to the bank as a result of road closures and civil unrest near the surrounding area of the municipality in which [SGBL] is located.  The social unrest has apparently subsided . . . allowing our process to serve [SGBL] on March 29, 2021, through personal service by serving Arlette Dalloul, Bank General Manager[.]"

## III.   ARGUMENT

### A. The Complaint Must Be Dismissed for Lack of Personal Jurisdiction

Even if service were proper, or proper service is ever effectuated, the Plaintiffs do not state a *prima facie* case of personal jurisdiction because the Complaint's allegations fail to show SGBL has a presence in or an affiliation with California, or that it engaged in conduct directed at California related to this lawsuit. *See* Fed. R. Civ. P. 12(b)(2).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U. S. 117, 125 (2014). California has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with the Constitution." Cal. Code Civ. Proc § 410.10. Therefore, to determine whether personal jurisdiction exists over SGBL, the exercise of jurisdiction must "comport[] with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125.

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Under federal due process principles, "the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S.

277, 283 (2014) (internal quotation marks omitted). In this regard, the Supreme Court has recognized two distinct types of personal jurisdiction based on the nature and extent of a defendant's contacts with the forum. "General" jurisdiction permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit, such as domicile. *Milliken v. Meyer*, 311 U.S. 457, 463–64 (1940). In contrast, under "specific" or "case-linked" jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quotation marks omitted). To confer specific jurisdiction consistent with due process, a defendant's "suit-related conduct" must create a "substantial connection with the forum State." *Walden*, 571 U.S. at 284.

### 1. The Complaint's Allegations Fail to Establish General Jurisdiction over SGBL

"With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (citation omitted).  "Outside of these paradigm bases, only 'in an exceptional case' should a court find a corporation's operations in the forum to be 'so substantial and of such a nature as to render the corporation at home in that State.'" *Greystone Hous. Found., Inc. v. Fantasy Holdings, LLC*, No. 16-CV-0300-AJB-DHB, 2016 WL 11621591, at *3 (S.D. Cal. May 19, 2016) (quoting *Daimler*, 517 U.S. at 139 n.19).  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

The Complaint's allegations "fall[] far short of making a prima facie case for general jurisdiction."  *Id.* Plaintiffs barely make a passing attempt to establish that this is an "exceptional case" by stating in conclusory fashion that the Defendants collectively "continuously" sent bank statements, emails, and placed telephone calls to California.  Compl. ¶ 9.  No specific instances are referenced, and this bare allegation is unsupported by "an affidavit or other documentary evidence." *Greystone*, 2016 WL 11621591, at *4.  Without more, the Complaint does not establish that SGBL is "at home" in California.

### 2.   The Complaint's Allegations Fail to Establish Specific Jurisdiction over SGBL

Nor can Plaintiffs show specific jurisdiction. To exercise specific personal jurisdiction consistent with due process, courts examine "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1030 (2021). Most fundamentally, "the relationship must arise out of contacts that the defendant himself" creates with the forum state, *id.* (quotation marks omitted); it cannot be based on another defendant's forum contacts, *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783–84. In addition, the plaintiff cannot be the only link between the defendant and the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U. S. at 285; *see id.* at 286 (observing "[t]hese same principles apply [to] intentional torts[.]").

In the Ninth Circuit, courts apply a three-factor test to determine whether a court may exercise specific jurisdiction over a foreign defendant:

> (1) the nonresident defendant must do some act or
> consummate some transaction with the forum state or
> perform some act by which it purposefully avails itself of
> the privilege of conducting activities in the forum state,
> thereby invoking the benefits and protections of its laws;
> (2) the claim must arise out of or result from the
> defendant's forum-related activity; and/or (3) the exercise
> of jurisdiction must be reasonable.

*Rocawear Licensing LLC v. Pacesetter Apparel Grp.*, No. CV 06-3093-CJC (CWx), 2007 WL 5289737, at *2 (C.D. Cal. Sept. 12, 2007) (Carney, J.).

The Complaint fails this test. As to the first factor, aside from alleging that Plaintiffs had $2.7 million in an SGBL bank account in 2019, the Complaint does not "provide any details of the parties' dealings" in California or elsewhere. *Greystone*, 2016 WL 11621591, at *4. Conspicuously absent from the Complaint is a single description of a communication or transaction that took place involving SGBL and California. Similarly, while the Complaint alleges that the Defendants "solicited Plaintiffs," who were residents of California, to deposit money into "Defendants' deposit account," Compl. ¶ 9, Plaintiffs do not describe what these solicitations entailed, when they were made, how they were communicated, or by whom. In this regard, the Complaint stands in stark contrast to findings of personal jurisdiction in which defendants are alleged to have "directly solict[ed] business" in the forum state. *See, e.g.*, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (contract expressly required plaintiff to deliver coal in forum state, and performance in the forum state was essential because a large percentage of coal called for by the contract existed in Montana); *Taubler v. Giraud*, 655 F.2d 991, 994 (9th Cir.1981) (specific allegations of, *inter alia*, defendant's visits to California, promotional activity there, and entering a contract to distribute wine in the state).

Since the Complaint fails to plausibly allege any facts describing SGBL's activities in or directed at California, it necessarily follows that, as to the second

factor, Plaintiffs' claims do not "arise out of or result from [SGBL's] forum-related activity." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783.  In fact, a fair reading of the Complaint makes plain that none of Plaintiffs' allegations—for example, conspiratorial conduct by unnamed Lebanese banks as part of the Lebanese financial system, nationwide fiscal determinations made by the BDL, including the limitation of wiring U.S. dollars abroad, or any alleged decision or action by any Defendant in this case—had any "affiliation" with California itself. *Id.* at 1780 (quotation marks omitted).  For this reason alone, subjecting SGBL to personal jurisdiction in California based on the alleged Lebanese conspiracy would be unreasonable. As for Plaintiffs' final basis for personal jurisdiction, that they "were harmed in this state," Compl. ¶ 9, it is unavailing because the "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290.  Application of well-established principles therefore shows the exercise of personal jurisdiction over SGBL would violate due process.

### 3.  The Complaint Fails to Allege Facts Sufficient to Warrant Application of the "Alter Ego" Doctrine

The Complaint eschews any specific or relevant allegations involving SGBL's actions toward Plaintiffs in California. Instead, it relies upon an "alter ego" theory of liability to claim that the alleged collective actions of all 103 plus Defendants should be imputed to SGBL. *See* Compl. ¶ 8. The entire allegation in support of this theory is described in Paragraph 8, which states:

> Plaintiffs are informed and believe that through such common ownership, SGBL, PPNB, and Sehanoui [sic] are, and at all times relevant were, alter egos of one another. There exists a unity of interests in ownership between Defendants such that any separateness between them has ceased to exist in that Sehanoui [sic] (and the other common owners) completely controlled, dominated, managed, and operated the other Defendants to suit their convenience. Therefore, each of such named or fictitiously named defendants are responsible in some manner to pay the obligations described herein and that

1    Plaintiffs' losses as herein alleged were proximately caused by

2    Defendants' acts.

3    *Id.*

4    In assessing whether a complaint adequately alleges alter ego liability for

5    state law claims, federal courts apply the law of the forum state. *Wolfe v. United*

6    *States*, 798 F.2d 124, 1244 n.3 (9th Cir. 1986), *cert denied*, 482 U.S. 927 (1987).

7    When alter ego claims "are based on allegations of fraud, . . . the heightened

8    pleading standard of Rule 9(b) is the lens through which those allegations must

9    be examined." *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d

10   385, 425 (S.D.N.Y. 2003). Although all seven counts against SGBL sound in

11   fraud, *see infra* Part D, the conclusory allegations supporting the Complaint's

12   alter ego theory are insufficient whether assessed under Rule 9(b) or the notice

13   pleading standard set out in Rule 8(b). *See* Fed. R. Civ. P. 9(b); 8(b).

14   Under California law, alter ego liability requires two showings: "First,

15   there must be such a unity of interest and ownership between the corporation and

16   its equitable owner that the separate personalities of the corporation and the

17   shareholder do not in reality exist. Second, there must be an inequitable result if

18   the acts in question are treated as those of the corporation alone." *Sonora*

19   *Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 526 (2000); *see also*

20   *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003).

21   "The purpose of the doctrine is to bypass the corporate entity for the

22   purpose of avoiding injustice. Its essence is that justice be done, and thus the

23   corporate form will be disregarded only in narrowly defined circumstances and

24   only when the ends of justice so require." *Neilson v. Union Bank of California,*

25   *N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003) (Morrow, J.) (quotation marks

26   and alterations omitted). The elements of alter ego liability and facts supporting

27   each element must be specifically alleged. *Id.* Conclusory allegations of "alter

28   ego" status are insufficient to state a claim. *Id.* at 1116; *accord Mililani Grp., Inc.*

*v. O'Reilly Auto., Inc.*, 621 Fed. App'x 436, 436 (9th Cir. 2015) (affirming dismissal based on "conclusory allegation" of an "inequitable result"); *In re Currency*, 265 F. Supp. 2d at 426 ("These purely conclusory allegations cannot suffice to state a claim based on . . . alter-ego liability, even under the liberal notice pleading standard").

      The Complaint is completely devoid of any specific and factual allegations that could sustain an alter ego theory of liability. With respect to the first element—a unity of ownership or interest—the Complaint alleges that Sehnaoui is the "chairman of the board of SBGL, as well as the owner and chairman of PPNB," then skips to the conclusion that "Sehnaoui (and the other common owners) completely controlled, dominated, managed, and operated the other Defendants to suit their convenience." Compl. ¶ 8. Such generalized assertions that defendants "exercised dominion and control" over one another and shared common ownership are precisely the type of "purely conclusory allegations" that "cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard." *In re Currency*, 265 F. Supp. 2d at 426. Indeed, if the mere allegation that a corporation shared ownership of another defendant, or was employed by a defendant, sufficed to establish alter ego liability, then the "narrowly defined circumstances," *Neilson*, 290 F. Supp. 2d at 1115, would encompass almost any lawsuit involving employee-employer co-defendants or those with overlapping financial interests.

      With respect to the second element, the Complaint does not describe how "an inequitable result" will follow "if the acts in question are treated as those of [the other Defendants] alone." *Sonora Diamond*, 83 Cal. App. 4th at 537. In the

absence of the type of specific allegations that are required to impute alter ego liability to SGBL, the entire Complaint must be dismissed as to it.[3]

**B. The Complaint Fails to Plead the Fraud Allegations in All Seven Counts with Particularity, as Required by Rule 9(b)**

All seven counts in the Complaint specifically incorporate fraud allegations, either by express reference to the "Wrongful Conduct" paragraphs, descriptions of a "Ponzi scheme," or both. *See, e.g.*, Compl. ¶¶ 42, 44–47 (Count 1); ¶¶ 50–55 (Count 2); ¶¶ 61–63 (Count 3), ¶¶ 65–66 (Count 4); ¶¶72–74, 77 (Count 5); ¶¶ 81–83 (Count 6); ¶¶ 87–90 (Count 7). In the Ninth Circuit, courts apply Rule 9(b)'s heightened pleading standard to state law claims that technically lack fraud as an element when those claims are "grounded" in fraud. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 n.17 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 223 (2019) (because complaint relied "on a 'unified course of fraudulent conduct,'" the claims were "'grounded in fraud' and therefore 'must satisfy the particularity requirement of Rule 9(b) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) is a "federally imposed rule" and applies "irrespective of whether the substantive law at issue is state or federal."); *accord Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950, 979 (C.D. Cal. 2015) (Fitzgerald, J.) (explaining that California Business and Professions Code § 17200 *et seq.* claims grounded in fraud must satisfy Rule 9(b)).

Under Rule 9(b), a plaintiff "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

---

[3] Even assuming Plaintiffs could plead facts sufficient to support an alter ego theory, it still would not confer personal jurisdiction over SGBL because the Complaint likewise fails to show the other Defendants are subject to general or specific personal jurisdiction in California. *Daimler*, 571 U.S. at 125; *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783–84.

1798999.2

9(b). "To satisfy Rule 9(b)'s particularity requirement, the complaint must include an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Depot, Inc.*, 915 F.3d at 668 (quotation marks omitted). This means that a complaint "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quotation marks omitted).

Where fraud is alleged against multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but requires plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quotation marks and alterations omitted); *see also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (same). "Conclusory allegations that [a defendant] knew [other defendants] were making false statements to clients . . . , and thus were acting in concert" with those defendants and were "active participants in the conspiracy without any stated factual basis are insufficient as a matter of law." *Swartz*, 476 F.3d at 765 (internal quotation marks omitted).

The Complaint does not meet any of the foregoing requirements of Rule 9(b). It broadly states that "Defendants solicited Plaintiffs" to make deposits into an unidentified bank account, issued Plaintiffs debit and credit cards, and "promised Plaintiffs high interest rates on their USD deposits to induce Plaintiffs to make the deposits." Compl. ¶¶ 9, 24. In making these allegations, the Complaint is silent as to "the names of the persons who made the allegedly fraudulent representations, their authority to speak, . . . what they said or wrote, and when it was said or written." *Flowers v. Wells Fargo Bank, N.A.*, No. C 11–1315 PJH, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011); *Salameh*, 726

F.3d at 1133. The Complaint also makes no attempt to differentiate among the Defendants. *Swartz*, 476 F.2d at 764. Indeed, it does not identify any act taken by SGBL itself in furtherance of the alleged conspiracy. The Complaint does not even state whether the alleged fraudulent representations were made orally or in writing.

Likely as a result of the Complaint being largely copied word-for-word from an unrelated lawsuit in the Southern District of New York, many of the fraud allegations actually involve *other* parties with no explained relationship to SGBL. *See, e.g.*, Compl. ¶ 14 ("Lebanese banks lured investments of USD by fraudulently representing to depositors that they would earn exceedingly high interest rates . . . ."); ¶ 21 ("Defendants . . . were among the chief perpetrators of the Ponzi scheme [the Central Bank of Lebanon] designed"). Such sweeping allegations are not "specific enough to give defendants notice of the particular misconduct that is alleged to constitute the fraud so that they can defend against the claim." *Flowers*, 2011 WL 2748650 at *6. Because it fails to satisfy Rule 9(b), the Complaint must be dismissed as to SGBL.

## C. The Complaint Fails to State a Claim upon Which Relief May Be Granted

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is proper when a complaint "lack[s] a cognizable legal theory" or there is an "absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A court must accept factual allegations as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on

the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting Fed. R. Civ. P. 12(b)(6)). While courts should liberally grant leave to amend a dismissed complaint, they need not do so if the deficiency cannot be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

### 1. The Economic Loss Rule Requires Dismissal of All Seven Counts

The Complaint alleges six torts in Count One through Six, and then repeats the earlier allegations in Count Seven, which alleges a violation of California Business and Professions Code § 17200. Each Count simply repackages the General Allegations, including the Wrong Conduct, using similar or identical language. The Counts are all grounded in an allegation of promissory fraud: that the Defendants lured the Plaintiffs to deposit their money in an SGBL account with the promises that the Plaintiffs would receive high interest rates, Compl. ¶ 24, and could withdraw dollars in the United States, *id.* ¶ 29. The Complaint alleges that these representations were knowingly false when made. *E.g.*, *id.* ¶¶ 24, 28.

Under California's economic loss rule, "purely economic losses are not recoverable in tort." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (Morrow, J.) (quotation marks omitted). The rule encompasses allegations of promissory fraud. *Audigier Brand Management v. Perez*, No. CV 12–5687–CAS (RZx), 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012) (Snyder, J.). The doctrine "is designed to maintain a distinction between damage remedies for breach of contract and for tort. The term 'economic loss' refers to damages that are solely monetary, as opposed to damages involving physical harm to person or property." *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007) (citation omitted). Torts such as negligent misrepresentation, where "the purportedly negligent

conduct is conceptually indistinct from a contract breach," are subject to the economic loss rule. *UMG Recordings*, 117 F. Supp. 3d at 1105. Additionally, the economic loss rule requires plaintiff alleging a tort to identify a duty outside of the alleged contractual relationship that enables a suit in tort. *Id.* at 1104. In this manner, the rule prevents plaintiffs from dressing up a contract claim as a tort.

The economic loss rule is fatal to all seven Counts for two reasons. First, the Complaint claims only economic damages arising from alleged broken promises, and the lost business opportunities that allegedly followed. *See, e.g.*, Compl. ¶¶ 31, 45, Prayer for Relief. Second, the Complaint fails to identify any duty owed by the Defendants to the Plaintiffs, other than ostensibly contractual duties arising from the Defendants' alleged promise of high interest rates on Plaintiffs' deposits, *id.* ¶ 24, and their representations that Plaintiffs "could transfer their USD outside Lebanon," *id.* ¶ 29. All of the "duties" identified in the Complaint relate directly to the performance of the collective Defendants' alleged promises of high interest rates and ability to withdraw funds in U.S. dollars. *See, e.g.*, *id.* ¶ 39 (listing the duties to "conduct themselves . . . in a manner consistent with the level of competence . . . normally imposed upon bank agents" and to "protect Plaintiffs' account"). Read in its entirety, the Complaint amounts to "nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *JMP Securities LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012). Accordingly, the Complaint must be dismissed as a matter of law because it "lacks a cognizable legal theory" to recover on any of the seven Counts. *Balisteri*, 901 F.2d at 699.

## 2. Additional Pleading Deficiencies

In addition to the above-described pleading deficiencies that apply to all seven Counts, Counts One and Two should be dismissed because the torts of negligent and intentional interference with prospective economic relations

1  require knowledge of the existence of the economic relationship with which the

2  defendant interferes. *See North American Chemical Co. v. Superior Court*, 59

3  Cal. App. 4th 764, 786; *Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296,

4  1305 (C.D. Cal. 1996) (Pregerson, J.). The Complaint fails to plausibly plead that

5  any of the Defendants knew of the Plaintiffs' plans for the Laguna Niguel or

6  Over Easy projects in Laguna Niguel, California, and Scottsdale, Arizona.

7  Compl. ¶¶ 31, 38. It defies both "context" and "common sense," *Ashcroft v.*

8  *Iqbal*, 556 U.S. 662, 679 (2009), to conclude, without any supporting allegations,

9  that the third largest bank in Lebanon—or its Chairman—was somehow aware of

10 the U.S. business plans of its depositors. Kabengi Decl. ¶ 5. Because a court is

11 not "required to accept as true allegations that are merely conclusory,

12 unwarranted deductions of fact, or unreasonable inference," *Sprewell v. Golden*

13 *State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of*

14 *reh'g*, 275 F.3d 1187 (9th Cir. 2001), Counts One and Two should be dismissed.

**IV.    The Court Should Dismiss the Complaint with Prejudice**

16         Although in general courts liberally grant leave to amend a dismissed

17 complaint, they need not do so where amendment would be futile. *Lopez*, 203

18 F.3d at 1130. The Complaint's defects go to the heart of the allegations: fraud

19 claims that lack an iota of particularity, alter ego claims that do not even attempt

20 to meet the required elements for such a showing, an absence of allegations

21 establishing personal jurisdiction over SGBL in California, and the applicability

22 of the economic loss rule that extinguishes all seven counts as a matter of law.

23 The fact that the Complaint simply copy-and-pasted large portions of a lawsuit

24 filed by other lawyers in New York raises significant questions as to whether the

25 investigation by Plaintiffs' counsel preceding the filing of the Complaint was

26 sufficient to satisfy basic standards of diligence required by members of the bar

27 in any U.S. court or jurisdiction. Under this combination of circumstances, there

28 is no reason to believe that an amendment by these Plaintiffs would be anything

but futile, and the Court should dismiss the Complaint without granting leave to amend.

Alternatively, prior to granting any leave to amend, the Court should require the Plaintiffs to include in their opposition to this Motion to Dismiss a Proposed Amended Complaint that at least attempts to fill the gaping legal holes in the original Complaint. *See Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 650 (9th Cir. 1984) (employing such a procedure).

## V.  CONCLUSION

SGBL respectfully requests that the Court dismiss the Complaint with prejudice.

DATED:  April 16, 2021            Respectfully Submitted,
                                  BROWNE GEORGE ROSS
                                  O'BRIEN ANNAGUEY & ELLIS LLP
                                      Thomas P. O'Brien

                                  By:      /s/ Thomas P. O'Brien
                                           Thomas P. O'Brien

                                  Attorney for Defendant  Société Générale de
                                  Banque au Liban, S.A.L.