BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Thomas P. O'Brien (State Bar No. 166369)
   tobrien@bgrfirm.com
Luke A. Fiedler (State Bar No. 307614)
   lfiedler@bgrfirm.com
801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808

Michael J. Sullivan (BBO No. 487210)
   msullivan@ashcroftlawfirm.com
ASHCROFT LAW FIRM
200 State St., 7th Floor, Boston, MA 02109
Telephone: (617) 573-9400
Facsimile: (617) 933-7607
*(pro hac vice)*

*Attorneys for Defendant Société Générale de
Banque au Liban, S.A.L.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE DAOUD, an individual, and JOUMANA DAOUD, an individual,<br><br>              Plaintiffs,<br><br>        v.<br><br>SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN, S.A.L., a Société Anonyme Libanaise; PIKES PEAK NATIONAL BANK, an unknown entity, and DOES 1-100, inclusive,<br>              Defendants. | Case No. 8:21-cv-000335-CJC-KES<br><br>**DEFENDANT SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN, S.A.L.'s NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Cormac J. Carney<br>Date: July 12, 2021<br>Time: 1:30 P.M.<br>Crtrm: 9B |

1831133.1

**TO THE HONORABLE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE** that on July 12, 2021, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 9B of the Ronald Reagan Federal Building and United States Courthouse, before the Honorable Cormac J. Carney, Defendant Société Générale de Banque au Liban, S.A.L., will and hereby does move to dismiss the following claims asserted by Plaintiffs Antoine Daoud and Joumana Daoud: (1) negligent interference with prospective economic relations; (2) intentional interference with prospective economic relations; (3) misappropriation; (4) negligence; (5) intentional misrepresentation; (6) negligent misrepresentation; (7) violation of Business and Professions Code § 17200; and (8) violation of Penal Code § 496.

This motion is made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(2), and 12(b)(6).  This motion is based on this notice, the attached memorandum of points and authorities, the attached declarations, the Court's file in this action, and any further evidence or argument presented at a hearing on this motion. Furthermore, this motion is made following the conference of counsel pursuant to Local Rule 7-3, which initially took place by email on May 26, 2021.

DATED:  June 1, 2021

Respectfully Submitted,
BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
  Thomas P. O'Brien

By: _____ /s/ Thomas P. O'Brien _____
            Thomas P. O'Brien

Attorney for Defendant Société Générale de Banque au Liban, S.A.L.

DATED:  June 1, 2021

Respectfully Submitted,
ASHCROFT LAW FIRM
  Michael J. Sullivan

By: _____ /s/ Michael J. Sullivan _____

1831133.1

Case No. 8:21-cv-00335-CJC-KES
DEFENDANT SGBL'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

2

Michael J. Sullivan
*(pro hac vice)*

3

4

Attorney for Defendant Société Générale de
Banque au Liban, S.A.L.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  BACKGROUND .................................................................................................1

  A.  Plaintiffs .........................................................................................................1

  B.  Defendants......................................................................................................2

     1. Société Générale De Banque Au Liban, S.A.L.........................................2

     2. Antoun Sehnaoui (Former Defendant).....................................................2

     3. Pikes Peak National Bank .........................................................................2

     4. Does 1 through 100, inclusive ...................................................................2

  C.  Procedural History ........................................................................................3

     1. The Original Complaint .............................................................................3

     2. Removal .....................................................................................................3

     3. Plaintiffs' Dismissal of Original Complaint Against Sehnaoui.................3

     4. Order to Show Cause.................................................................................3

     5. First Amended Complaint .........................................................................4

III. ARGUMENT ......................................................................................................6

  A.  The FAC Must Be Dismissed for Lack of Personal Jurisdiction....................6

     1. The FAC's Allegations Fail to Establish General Jurisdiction over SGBL...7

     2. The FAC's Allegations Fail to Establish Specific Jurisdiction over SGBL..8

  B.  The FAC Fails to Plead the Fraud Allegations in All Eight Counts with
    Particularity, as Required by Rule 9(b)..............................................................11

  C.  The FAC Fails to State a Claim upon Which Relief May Be Granted..........13

     1. The Economic Loss Rule Requires Dismissal of All Eight Counts of the
    FAC ...................................................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents**

**(Continued)**

2. Additional Pleading Deficiencies .......................................................................16

IV. The Court Should Dismiss the FAC with Prejudice ..........................................16

V.  CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
121 F. Supp. 3d 950 (C.D. Cal. 2015) ...................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................16

*Audigier Brand Management v. Perez*, No. CV 12–5687–CAS (RZx),
2012 WL 5470888 (C.D. Cal. Nov. 5, 2012)........................................14

*Balisteri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988)..........................................................13, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................14

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008)................................................................6

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) .............................................................7, 10, 11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .............................................................................8

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996).................................................................14

*Daimler AG v. Bauman*,
571 U. S. 117 (2014) .........................................................................6, 7

*Daou v. BLC Bank, S.A.L.*,
No. 1:20-cv-4438 (S.D.N.Y. June 10, 2020) ..........................................4

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019)..........................................................11, 12

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011)................................................................12

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2

*Flowers v. Wells Fargo Bank, N.A.*,

   No. C 11–1315 PJH, 2011 WL 2748650 (N.D. Cal. July 13, 2011) ...................13

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,

   141 S. Ct. 1017 (2021) ............................................................................................8

*Giles v. General Motors Acceptance Corp.*,

   494 F.3d 865 (9th Cir. 2007)...............................................................................15

*Greystone Hous. Found., Inc. v. Fantasy Holdings, LLC*,

   No. 16-CV-0300-AJB-DHB, 2016 WL 11621591 (S.D. Cal. May 19, 2016) ......7

*In Dole Food Co., Inc. v. Watts*,

   303 F.3d 1104 (9th Cir. 2002) ...............................................................................8

*JMP Securities LLP v. Altair Nanotechnologies Inc.*,

   880 F. Supp. 2d 1029 (N.D. Cal. 2012) ..............................................................15

*Kearns v. Ford Motor Co.*,

   567 F.3d 1120 (9th Cir. 2009)..............................................................................11

*Lopez v. Smith*,

   203 F.3d 1122 (9th Cir. 2000)........................................................................14, 16

*Milliken v. Meyer*,

   311 U.S. 457 (1940)................................................................................................7

*Morrill v. Scott Fin. Corp.*,

   873 F.3d 1136 (9th Cir. 2017) ..........................................................................9, 10

*Neubronner v. Milken*,

   6 F.3d 666 (9th Cir. 1993) ...................................................................................12

*North American Chemical Co. v. Superior Court*,

   59 Cal. App. 4th 764 (1997)................................................................................16

*Panavision Int'l, L.P. v. Toeppen*,

   945 F. Supp. 1296 (C.D. Cal. 1996) ...................................................................16

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1831133.1

Case No. 8:21-cv-00335-CJC-KES

DEFENDANT SGBL'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES
### (Continued)

*Salameh v. Tarsadia Hotel*,

    726 F.3d 1124 (9th Cir. 2013) ................................................................ 12, 13

*Schwarzenegger v. Fred Martin Motor Co.*,

    374 F.3d 797 (9th Cir. 2004) ..................................................................... 8, 9

*Sprewell v. Golden State Warriors*,

    266 F.3d 979 (9th Cir. 2001) ........................................................................ 16

*Swartz v. KPMG LLP*,

    476 F.3d 756 (9th Cir. 2007) ........................................................................ 12

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,

    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................... 14, 15

*Vess v. Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003) ................................................................ 11, 13

*Walden v. Fiore*,

    571 U.S. 277 (2014) ......................................................................... 7, 8, 9, 11

## Statutes

28 U.S.C. §1441 .................................................................................................. 3

28 U.S.C. §1441(a) ............................................................................................. 3

18 U.S.C. § 1446(b)(1) ....................................................................................... 3

28 U.S.C. §1332 .................................................................................................. 3

28 U.S.C. §1332(a) ............................................................................................. 3

## Other Authorities

Business and Professions Code § 17200 ..................................................... 4, 11, 14

Cal. Code Civ. Proc. § 410.10 ........................................................................... 6

Penal Code § 496 ......................................................................................... 4, 14

# TABLE OF AUTHORITIES

### (Continued)

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................................. passim

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In their First Amended Complaint ("FAC"), Plaintiffs again claim that they were victimized by an international conspiracy perpetrated by the entire Lebanese banking system, including the Banque du Liban ("BDL"), the central bank and regulatory authority for all banks in Lebanon. Plaintiffs contend that those entities—together with Defendant Société Générale De Banque Au Liban, S.A.L. ("SGBL")—enticed them into opening an unknown number of Lebanese retail bank accounts with high interest rates, only to later intentionally impose monetary policies (apparently using Lebanon's current highly-publicized fiscal crisis as subterfuge) to prevent them from wiring funds to the United States in U.S. dollars. The original Complaint's fanciful and generalized allegations appear to have largely been copied word-for-word from an unrelated, since-dismissed lawsuit brought last year by other lawyers in the Southern District of New York; Plaintiffs did not bother to author their own pleading in their second try either.  Plaintiffs, having had the benefit of seeing their original Complaint's deficiencies highlighted and explained by SGBL's Motion to Dismiss, fail to adequately address any of those flaws in their FAC.

For the reasons that follow, the FAC should be dismissed as to SGBL for lack of personal jurisdiction, insufficient allegations to support a fraud claim under Rule 9(b), and failure to state a claim upon which relief can be granted due to the economic loss rule and other basic legal principles.

### II.  BACKGROUND

#### A. Plaintiffs

According to the FAC, Plaintiffs are two individuals who reside in Orange County, California. FAC. ¶¶ 1–2.

### B. Defendants

#### 1.  Société Générale De Banque Au Liban, S.A.L.

SGBL is a Lebanese joint stock company headquartered in Lebanon. FAC ¶ 3. As the third largest commercial bank in Lebanon, SGBL offers banking and financial services to individuals and corporations in Lebanon and neighboring countries.  Declaration of Jeanine Kabengi ("Kabengi Decl.") ¶ 5. SGBL is organized under and subject to the laws of Lebanon, and is regulated by the BDL, which has regulatory authority over all banks in Lebanon. *Id.* ¶ 4. SGBL is not incorporated, licensed, registered as a foreign corporation, or otherwise authorized to conduct business anywhere in the United States. *Id.* ¶ 6. SGBL has no subsidiaries, offices, branches, employees, directors, or officers in California or elsewhere in the United States. *Id.* at 7–8, 10.

#### 2.  Antoun Sehnaoui (Former Defendant)

Sehnaoui is the Chairman of SGBL. Declaration of Antoun Sehnaoui ¶ 5. He is also the Chairman of PPNB, *id.* ¶ 5, a separate bank. Sehnaoui is a citizen and resident of Lebanon. *Id.* ¶ 4. He is not a resident of the United States. *Id.* ¶ 3. The day after Sehnaoui filed his Motion to Dismiss, Dkt. 10, the Plaintiffs voluntarily dismissed the original Complaint as to Sehnaoui, Dkt. 11, and did not include him as a party to the FAC.

#### 3.  Pikes Peak National Bank

The FAC states that PPNB "is an unknown entity with its headquarters in Colorado Springs, Colorado," and that "it is a privately held bank and a member of the Federal Deposit Insurance Corporation." FAC ¶ 4. The FAC does not allege that PPNB has any presence in California or any banking relationship with Plaintiffs.

#### 4.  Does 1 through 100, inclusive

The FAC lists as Defendants "Does 1 through 100, inclusive." *Id.* ¶ 5. It states that "Plaintiffs are informed and believe and based thereon allege that each

of such fictitious named defendants are responsible in some manner or status to pay the obligations described herein and that Plaintiffs' losses as herein alleged were proximately caused by Defendants' acts." *Id.* No acts, statements, or omissions are attributed specifically to these 100 Defendants in the FAC.

### C. Procedural History

#### 1. The Original Complaint

On December 16, 2020, Plaintiffs filed their original Complaint in Orange County Superior Court. *Id.* ¶ 1.

#### 2. Removal

On February 19, 2021, Sehnaoui timely filed his notice of removal to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. Dkt. 1. *See* 18 U.S.C. § 1446(b)(1) (requiring notice to be filed within 30 days of service of the initial pleading from which removability can be ascertained). This Court has subject matter jurisdiction because, according to the FAC's allegations, there is complete diversity between the Plaintiffs and Defendants and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), 1441(a); Notice of Removal, Dkt. 1 ¶¶ 6–21 (explaining in detail the basis for diversity jurisdiction).

#### 3. Plaintiffs' Dismissal of Original Complaint Against Sehnaoui

On February 26, 2021, Sehnaoui filed a Motion to Dismiss Complaint. Dkt. 10. On February 27, 2021, Plaintiffs voluntarily moved to dismiss the complaint against Sehnaoui only. Dkt. 11.

#### 4. Order to Show Cause

On March 25, 2021, this Court issued an Order to Show Cause Re Dismissal for Lack of Prosecution. Dkt. 14. The Court ordered Plaintiffs to show cause why the action should not be dismissed for lack of service, since more than 90 days had passed since the Complaint had been filed. *Id.* The Court noted that service was due to occur by March 16, 2021. *Id.*

On April 1, 2021, Plaintiffs filed a Declaration of Marc Lazo in Response to Order to Show Cause Re Dismissal for Lack of Prosecution. Dkt. 17. With regard to SGBL, the Declaration stated that "we learned from our office's process server that the delay in serving [SGBL] was due to the process server's inability to gain access to the bank as a result of road closures and civil unrest near the surrounding area of the municipality in which [SGBL] is located. The social unrest has apparently subsided . . . allowing our process to serve [SGBL] on March 29, 2021, through personal service by serving Arlette Dalloul, Bank General Manager[.]" On April 15, 2021, the Court discharged the Order to Show Cause. Dkt. 20.

### 5. First Amended Complaint

On May 8, 2021, Plaintiffs filed the FAC. The FAC alleges the same seven state law claims against SGBL, PPNB, and Does 1 through 100, including (1) negligent interference with prospective economic relations, (2) intentional interference with prospective economic relations, (3) misappropriation, (4) negligence, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) violation of Business and Professions Code § 17200, in addition to a new, eighth count, a violation of Penal Code § 496. All eight counts arise from an alleged retail banking relationship between Plaintiffs (as depositors) and SGBL. FAC at 1.

The FAC's "General Allegations," which are largely copied word-for-word from an unrelated lawsuit involving different parties and lawyers in the Southern District of New York,[1] describe a wide-ranging conspiracy and "Ponzi scheme" by which SGBL and other banks colluded with the BDL (*i.e.*, Lebanon's equivalent of the U.S. Federal Reserve System) to "lure[] investments of USD by fraudulently

---

[1] *See Daou v. BLC Bank, S.A.L.*, No. 1:20-cv-4438, Dkt. 1 (S.D.N.Y. June 10, 2020) ("Daou Complaint"). *Compare* FAC ¶¶ 14–22, 33–36 *with* Daou Complaint ¶¶ 1–10, 23, 37, 41–42. In April, between Plaintiffs' filing of the original Complaint and the FAC, the *Daou* court granted the defendants' motions to dismiss the complaint. Dkt. 97 (Apr. 9, 2021, Op. and Order).

representing to depositors that they would earn exceedingly high interest rates while still having ready access to their USD." *Id.* ¶ 16. According to the FAC, the Defendants, "among other Lebanese banks, . . . collusively agreed to violate the rights of USD depositors from withdrawing their USD or transferring USD outside Lebanon." *Id.* ¶ 29.

Even though the Plaintiffs "specifically advised Defendants that they needed the ability to readily transfer their USD from Lebanon to their accounts in the United States," *id.* ¶ 28, Defendants falsely told Plaintiffs that they could transfer their deposited USD outside Lebanon, *id.* ¶ 30.

The FAC collectively refers to the allegations set forth in Paragraphs 28 through 35 as the "Wrongful Conduct." *Id.* ¶¶ 28–35. In those paragraphs, the FAC alleges, *inter alia*, that "Defendants conspired with each other to make fraudulent representations to Plaintiffs," *id.* ¶ 33, that the Defendants engaged in "unlawful conduct and participat[ed] in the Ponzi scheme," *id.* ¶ 34, and that the Defendants "conspire[d] with other Lebanese commercial banks to commit wire fraud and mail fraud in the United States," *id.* ¶ 35. The Wrongful Conduct allegations and/or other fraud allegations are expressly incorporated into each of the eight counts. *See, e.g.*, *id.* ¶¶ 42, 43, 48 (Count 1); ¶¶ 52-53 (Count 2); ¶¶ 62-64 (Count 3), ¶¶ 67(a) and (c) (Count 4); ¶¶ 71, 79 (Count 5); ¶ 83 (Count 6); ¶¶ 90 (Count 7); and ¶¶ 94-95 (Count 8).

The FAC further alleges that the Plaintiffs opened an SGBL bank account in January 2019 "while in California, and proceeded to transfer approximately $2.5M to said account," *id.* ¶ 25, and that, as a result of the alleged withholding of funds, Plaintiffs were unable to complete business deals that would have turned an approximately $8 million profit. *Id.* ¶ 31. Elsewhere, the FAC alleges without support that the Defendants "caused Plaintiffs tens of millions of dollars in damages above and beyond the stolen deposits." *Id.* ¶ 34.

The only new, non-boilerplate factual allegations offered by the FAC are described in paragraphs 25 and 26. FAC ¶¶ 25-26. In those paragraphs, Plaintiffs claim that, in 2018, then-SGBL branch manager Arlette Dalloul "began contacting Plaintiffs in California by telephone," and offering Plaintiffs "monetary incentives" to deposit U.S. funds into an SGBL account. *Id.* ¶ 25.  The FAC further alleges that Dalloul promised Plaintiffs a 10% interest rate return on their deposits, *id.*, and "offered Plaintiffs financially attractive debit and credit cards, *id.* ¶ 26. After a series of phone calls made by Dalloul (from an unspecified location) to Plaintiffs while Plaintiffs resided in California, Plaintiffs ultimately agreed to deposit approximately $2.5 million into an SGBL account. *Id.* ¶ 25.

## III.    ARGUMENT

### A. The FAC Must Be Dismissed for Lack of Personal Jurisdiction

Plaintiffs do not state a *prima facie* case of personal jurisdiction because the FAC's allegations still fail to show SGBL has a presence in or an affiliation with California, or that it engaged in conduct directed at California related to this lawsuit sufficient to subject it to litigation in California. *See* Fed. R. Civ. P. 12(b)(2).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U. S. 117, 125 (2014). California has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with the Constitution." Cal. Code Civ. Proc § 410.10. Therefore, to determine whether personal jurisdiction exists over SGBL, the exercise of jurisdiction must "comport[] with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125.

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Under federal due process principles, "the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions

of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotation marks omitted). In this regard, the Supreme Court has recognized two distinct types of personal jurisdiction based on the nature and extent of a defendant's contacts with the forum. "General" jurisdiction permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit, such as domicile. *Milliken v. Meyer*, 311 U.S. 457, 463–64 (1940). In contrast, under "specific" or "case-linked" jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quotation marks omitted). To confer specific jurisdiction consistent with due process, a defendant's "suit-related conduct" must create a "substantial connection with the forum State." *Walden*, 571 U.S. at 284.

### 1. The FAC's Allegations Fail to Establish General Jurisdiction over SGBL

"With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (citation omitted). "Outside of these paradigm bases, only 'in an exceptional case' should a court find a corporation's operations in the forum to be 'so substantial and of such a nature as to render the corporation at home in that State.'" *Greystone Hous. Found., Inc. v. Fantasy Holdings, LLC*, No. 16-CV-0300-AJB-DHB, 2016 WL 11621591, at *3 (S.D. Cal. May 19, 2016) (quoting *Daimler*, 517 U.S. at 139 n.19). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

DEFENDANT SGBL'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

The FAC's allegations "fall[] far short of making a prima facie case for general jurisdiction." *Id.* Plaintiffs barely make a passing attempt to establish that this is an "exceptional case" by stating in conclusory fashion that the Defendants collectively "continuously" sent bank statements, emails, and placed telephone calls to California.  FAC ¶ 9.  Having had the benefit of SGBL's Motion to Dismiss the original Complaint and its attached declarations, Plaintiffs fail to address the evidence that "SGBL is not incorporated, licensed, registered as a foreign corporation, or otherwise authorized to conduct business anywhere in the United States," or that it has no physical presence, employees, directors, or officers in the United States.  Declaration of Jeanine Kabengi ("Kabengi Decl."), ¶¶ 6-10; *see In Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (courts may consider sworn declarations in determining jurisdictional questions at the motion to dismiss stage).   Accordingly, the FAC fails to establish that SGBL is "at home" in California.

### 2.  The FAC's Allegations Fail to Establish Specific Jurisdiction over SGBL

Nor can Plaintiffs show specific jurisdiction. To exercise specific personal jurisdiction consistent with due process, courts examine "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1030 (2021). In assessing whether jurisdiction is proper, it is axiomatic that a plaintiff cannot be the only link between the defendant and the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."

*Walden*, 571 U. S. at 285; *see id.* at 286 (observing "[t]hese same principles apply [to] intentional torts[.]").

In the Ninth Circuit, courts apply a three-factor test to determine whether a court may exercise specific jurisdiction over a foreign defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d 797 at 802. The FAC fails this test. As to the first factor, "[p]urposeful direction requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quotation marks omitted). *Morrill* is instructive as to the standard for "purposeful direction." There, plaintiffs suing in Arizona alleged that the defendants made phone calls, sent letters and emails, mailed pleadings, and even sought legal process and instituted civil actions in Arizona in connection with a defamation lawsuit taking place in Nevada. *Id.* at 1142-43. The Ninth Circuit in *Morrill* determined that the purposeful direction test was unsatisfied because "the sole connection to the forum state . . . was that plaintiffs resided there." *Id.* at 1145. On the other hand, "the driving force behind Defendants' actions" was the ongoing litigation in Nevada. *Id.* To the extent the defendants pursued civil process in and made communications directed at Arizona, it was all for the purpose of advancing the litigation in Nevada. *Id.* Furthermore,

"[t]he involvement of Arizona procedures was solely a by-product of Plaintiffs' residence." *Id.*

Here, too, the only reason that the alleged telephonic communications from Dalloul reached California was due to Plaintiffs' residence. Otherwise, all of the even tangentially jurisdictionally relevant facts in the FAC concern Lebanon: the alleged vast conspiracy and Ponzi scheme, the collusion, and the SGBL bank account itself all occurred or were located in the Lebanon. The uncontroverted facts that SGBL has no business operations, employees, or physical presence anywhere in the United States highlights the Plaintiffs' residence as the primary—indeed, sole—reason for any California contacts whatsoever to have occurred. *See* Kabengi Decl. ¶¶ 6-10. That leaves only the phone calls that were "merely incidental to an out-of-state transaction," which fail to "satisfy the constitutional minimum contacts requirement." *Morrill*, 873 F.3d at 1147.

The FAC likewise fails to allege claims that "arise out of or result from [SGBL's] forum-related activity." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783. In fact, a fair reading of the FAC makes plain that none of Plaintiffs' allegations—for example, conspiratorial conduct by unnamed Lebanese banks as part of the Lebanese financial system, nationwide fiscal determinations made by the BDL, including the limitation of wiring U.S. dollars abroad, or any alleged decision or action by any Defendant in this case—had any "affiliation" with California itself. *Id.* at 1780 (quotation marks omitted).

Finally, subjecting SGBL to personal jurisdiction in California based on the alleged Lebanese conspiracy would be unreasonable. Plaintiffs in essence ask the Court to subject foreign banks to jurisdiction any time they solicit California resident clients to deposit funds into a foreign bank account. This case exemplifies the unreasonableness of such a result: facing a lawsuit that alleges a grand Lebanese conspiracy, "the burden on the defendant" in defending against such claims would be high, while California has no "interest in adjudicating" what

1    amounts to a dispute over a foreign fiscal crisis. *Bristol-Myers Squibb*, 137 S. Ct.

2    at 1786.

3         As for Plaintiffs' final basis for personal jurisdiction, that they "were harmed

4    in this state," FAC ¶ 9, it is unavailing because the "mere injury to a forum resident

5    is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290.  Application

6    of well-established principles therefore shows the exercise of personal jurisdiction

7    over SGBL would violate due process.

8       **B. The FAC Fails to Plead the Fraud Allegations in All Eight Counts**

9          **with Particularity, as Required by Rule 9(b)**

10        Each of the FAC's eight counts specifically incorporate fraud allegations,

11    either by express reference to the "Wrongful Conduct" paragraphs, descriptions of

12    a "Ponzi scheme," or both. *See, e.g.*, ¶¶ 42, 43, 48 (Count 1); ¶¶ 52-53 (Count 2);

13    ¶¶ 62-64 (Count 3), ¶¶ 67(a) and (c) (Count 4); ¶¶ 71, 79 (Count 5); ¶ 83 (Count

14    6); ¶¶ 90 (Count 7); and ¶¶ 94-95 (Count 8). In the Ninth Circuit, courts apply Rule

15    9(b)'s heightened pleading standard to state law claims that technically lack fraud

16    as an element when those claims are "grounded" in fraud. *Depot, Inc. v. Caring*

17    *for Montanans, Inc.*, 915 F.3d 643, 668 n.17 (9th Cir. 2019), *cert. denied*, 140 S.

18    Ct. 223 (2019) (because complaint relied "on a 'unified course of fraudulent

19    conduct,'" the claims were "'grounded in fraud' and therefore 'must satisfy the

20    particularity requirement of Rule 9(b) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317

21    F.3d 1097, 1103–04 (9th Cir. 2003)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

22    1125 (9th Cir. 2009) (Rule 9(b) is a "federally imposed rule" and applies

23    "irrespective of whether the substantive law at issue is state or federal."); *accord*

24    *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d

25    950, 979 (C.D. Cal. 2015) (Fitzgerald, J.) (explaining that California Business and

26    Professions Code § 17200 *et seq.* claims grounded in fraud must satisfy Rule 9(b)).

27        Under Rule 9(b), a plaintiff "alleging fraud or mistake . . . must state with

28    particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

"To satisfy Rule 9(b)'s particularity requirement, the complaint must include an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Depot, Inc.*, 915 F.3d at 668 (quotation marks omitted). This means that a complaint "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quotation marks omitted). The purpose of these requirements is to provide allegations "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

Where fraud is alleged against multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but requires plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quotation marks and alterations omitted); *see also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (same). "Conclusory allegations that [a defendant] knew [other defendants] were making false statements to clients . . . , and thus were acting in concert" with those defendants and were "active participants in the conspiracy without any stated factual basis are insufficient as a matter of law." *Swartz*, 476 F.3d at 765 (internal quotation marks omitted).

The FAC does not meet any of the foregoing requirements of Rule 9(b). The majority of the allegations involve a broad-based conspiracy between unnamed banks and Lebanon's Central Bank spanning decades. In making these allegations, the FAC is silent as to "the names of the persons who made the allegedly fraudulent representations, their authority to speak, . . . what they said or wrote, and when it

was said or written." *Flowers v. Wells Fargo Bank, N.A.*, No. C 11–1315 PJH, 2011 WL 2748650, at \*6 (N.D. Cal. July 13, 2011); *Salameh*, 726 F.3d at 1133. Nor does the FAC "provide the particulars of when, where, or how the alleged conspiracy occurred." *Vess*, 317 F.3d 1097 at 1106. The sole named participant in the alleged conspiracy who is claimed to have had anything to do with Plaintiffs—Dalloul—has no apparent connection to the conspiracy that was occurring in Lebanon.  Instead, she is merely alleged to have solicited Plaintiffs as retail bank customers.

Likewise, as a result of the FAC being largely copied word-for-word from an unrelated lawsuit in the Southern District of New York, many of the fraud allegations actually involve *other* parties with no explained relationship to SGBL. *See, e.g.*, Compl. ¶ 14 ("Lebanese banks lured investments of USD by fraudulently representing to depositors that they would earn exceedingly high interest rates . . . ."); ¶ 21 ("Defendants . . . were among the chief perpetrators of the Ponzi scheme [the Central Bank of Lebanon] designed"). Such sweeping allegations are not "specific enough to give defendants notice of the particular misconduct that is alleged to constitute the fraud so that they can defend against the claim." *Flowers*, 2011 WL 2748650 at \*6. Because it fails to satisfy Rule 9(b), the FAC must be dismissed as to SGBL.

### C. The FAC Fails to State a Claim upon Which Relief May Be Granted

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is proper when a complaint "lack[s] a cognizable legal theory" or there is an "absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A court must accept factual allegations as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting Fed. R. Civ. P. 12(b)(6)). While courts should liberally grant leave to amend a dismissed complaint, they need not do so if the deficiency cannot be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

### 1. The Economic Loss Rule Requires Dismissal of All Eight Counts of the FAC

The FAC alleges six torts in Count One through Six, and then repeats the earlier allegations in Counts Seven and Eight, which allege violations of California Business and Professions Code § 17200 and Penal Code § 496. Each Count simply repackages the General Allegations, including the Wrong Conduct, using similar or identical language. The Counts are all grounded in an allegation of promissory fraud: that the Defendants lured the Plaintiffs to deposit their money in an SGBL account with the promises that the Plaintiffs would receive high interest rates and could withdraw dollars in the United States. FAC ¶ 26. The FAC alleges that these representations were knowingly false when made. *Id.* ¶ 30.

Under California's economic loss rule, "purely economic losses are not recoverable in tort." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (Morrow, J.) (quotation marks omitted). The rule encompasses allegations of promissory fraud. *Audigier Brand Management v. Perez*, No. CV 12–5687–CAS (RZx), 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012) (Snyder, J.). The doctrine "is designed to maintain a distinction between damage remedies for breach of contract and for tort. The term 'economic loss' refers to damages that are solely monetary, as opposed to damages involving physical harm to person or property." *Giles v. General Motors*

*Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007) (citation omitted). Torts such as negligent misrepresentation, where "the purportedly negligent conduct is conceptually indistinct from a contract breach," are subject to the economic loss rule. *UMG Recordings*, 117 F. Supp. 3d at 1105. Additionally, the economic loss rule requires plaintiff alleging a tort to identify a duty outside of the alleged contractual relationship that enables a suit in tort. *Id.* at 1104. In this manner, the rule prevents plaintiffs from dressing up a contract claim as a tort.

The economic loss rule is fatal to all eight Counts for two reasons. First, the FAC claims only economic damages arising from alleged broken promises, and the lost business opportunities that allegedly followed. *See, e.g.*, FAC ¶¶ 31, 46, Prayer for Relief. Second, the FAC fails to identify any duty owed by the Defendants to the Plaintiffs, other than ostensibly contractual duties arising from the Defendants' alleged promise of high interest rates on Plaintiffs' deposits, *id.* ¶ 26, and their representations that Plaintiffs "could transfer their USD outside Lebanon," *id.* ¶ 30. All of the "duties" identified in the FAC relate directly to the performance of the collective Defendants' alleged promises of high interest rates and ability to withdraw funds in U.S. dollars in the context of their banking relationship with Plaintiffs. *See, e.g.*, *id.* ¶ 40 (listing the duties to "conduct themselves . . . in a manner consistent with the level of competence . . . normally imposed upon bank agents" and to "protect Plaintiffs' account"). Read in its entirety, the FAC amounts to "nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *JMP Securities LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012). Indeed, the FAC itself concedes this by asserting as its basis for jurisdiction the claim that "Plaintiffs were harmed in [California] and Defendants failed to uphold its [sic] contractual obligations in Orange County, California." FAC ¶ 11. Accordingly, the FAC must be dismissed as a matter of law because it "lacks a

1831133.1

1   cognizable legal theory" to recover on any of the eight Counts. *Balisteri*, 901 F.2d

2   at 699.

### 2. Additional Pleading Deficiencies

4          In addition to the above-described pleading deficiencies that apply to all

5   eight Counts, Counts One and Two should be dismissed because the torts of

6   negligent and intentional interference with prospective economic relations require

7   knowledge of the existence of the economic relationship with which the defendant

8   interferes. *See North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th

9   764, 786; *Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1305

10  (C.D. Cal. 1996) (Pregerson, J.). The FAC fails to plausibly plead that any of the

11  Defendants knew of the Plaintiffs' plans for the Laguna Niguel or Over Easy

12  projects in Laguna Niguel, California, and Scottsdale, Arizona. Compl. ¶ 31. It

13  defies both "context" and "common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 679

14  (2009), to conclude, without any supporting allegations, that a Lebanese bank was

15  somehow aware of the U.S. business plans of its depositors. Kabengi Decl. ¶ 5.

16  Because a court is not "required to accept as true allegations that are merely

17  conclusory, unwarranted deductions of fact, or unreasonable inference," *Sprewell*

18  *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial*

19  *of reh'g*, 275 F.3d 1187 (9th Cir. 2001), Counts One and Two should be dismissed.

20  ### IV.   The Court Should Dismiss the FAC with Prejudice

21          Although in general courts liberally grant leave to amend a dismissed

22  complaint, they need not do so where amendment would be futile. *Lopez*, 203 F.3d

23  at 1130. The FAC's defects go to the heart of the allegations: fraud claims that lack

24  an iota of particularity, an absence of allegations establishing personal jurisdiction

25  over SGBL in California, and the applicability of the economic loss rule that

26  extinguishes all seven counts as a matter of law. The fact that the FAC—like the

27  original Complaint—simply copy-and-pasted large portions of a lawsuit filed by

28  other lawyers in New York raises significant questions as to whether the

investigation by Plaintiffs' counsel preceding the filing of either version of the Complaint was sufficient to satisfy basic standards of diligence required by members of the bar in any U.S. court or jurisdiction. Under this combination of circumstances, there is no reason to believe that an amendment by these Plaintiffs would be anything but futile, and the Court should dismiss the FAC without granting leave to amend.

## V.   CONCLUSION

SGBL respectfully requests that the Court dismiss the FAC with prejudice.

DATED:  June 1, 2021

Respectfully Submitted,
BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Thomas P. O'Brien

By:      /s/ Thomas P. O'Brien
Thomas P. O'Brien

Attorney for Defendant Société Générale de Banque au Liban, S.A.L.

DATED:  June 1, 2021

Respectfully Submitted,
ASHCROFT LAW FIRM
Michael J. Sullivan

By:      /s/ Michael J. Sullivan
Michael J. Sullivan
*(pro hac vice)*

Attorney for Defendant Société Générale de Banque au Liban, S.A.L.