Marc Y. Lazo, SBN: 215998
K&L LAW GROUP, P.C.
2646 Dupont Drive, Suite 60340
Irvine, California 92612
Telephone Number: (949) 216-4002
Facsimile Number: (800) 596-0370
Email: mlazo@kllawgroup.com

Attorneys for Plaintiffs Antoine Daoud and Joumana Daoud

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANTOINE DAOUD, an individual, and  JOUMANA DAOUD, an individual,<br><br>                    Plaintiffs,<br><br>        v.<br><br>SOCIETE GENERALE DE BANQUE AU LIBAN, S.A.L., a Societe Anonyme Libanaise; ANTOUN SEHNAOUI,  an individual; PIKES PEAK NATIONAL BANK, an unknown entity, and DOES 1-100, inclusive,<br><br>                    Defendants.<br><br>_____ | CASE No.: 8:21-cv-000335-CJC-KES<br><br>**DECLARATION OF ANTOINE DAOUD IN SUPPORT OF OPPOSITIONS TO MOTIONS TO DISMISS**<br><br><br>Date:      July 12, 2021<br>Time:      1:30 p.m.<br>Courtroom:   9B<br><br>*Honorable Judge Cormac J. Carney* |

-1-

## DECLARATION OF ANTOINE DAOUD

I, ANTOINE DAOUD, declare as follows:

1. I am over the age of 18 years and am one of the Plaintiffs in the within action. I have personal knowledge of the facts stated herein and if called upon as a witness, I could and would competently testify to the following:

2. At all relevant times mentioned in the First Amended Complaint in this matter, I am and was a resident of the State of California, USA.

3. On or about December 2018 and over several months thereafter, Arlette Dalloul, branch manager of defendant SGBL in the town of Chtaura, Lebanon,  began contacting me by phone and email in California, specifically to solicit me and my wife into investing USD into SGBL by offering monetary incentives and concessions to do so. For example, Ms. Dalloul promised me a 10% return on my money if such deposits or transfers were in USD and made by a certain date.   I was also offered debit and credit cards which I could draw from against all funds I deposited or transferred.  Ms. Dalloul on many occasions assured and represented to me that the deposited/transferred fund would remain liquid and that my wife and I would have access to them at all times. However, the interest would of course not accrue if the funds were withdrawn.

4. In January 2019, based on the promises by SGBL, I agreed to open an account with SGBL and transferred 2.5 million USD in SGBL, which was essentially our entire life's savings.  I was also issued a credit card by SGBL when I opened up the account.   Attached hereto as Exhibit "A" is a true and correct photocopy of the credit card and credit card issued to me by SGBL.

5. The national banking crisis in Lebanon culminated on approximately October 17, 2019, causing all depositors' funds to be indefinitely frozen.  I later learned, as confirmed by the Declaration of Robin Roberts, that Mr. Antoun Sehnaoui purchased Pikes Peak National Bank (PPNB) in 2018, at approximately the same time Ms. Dalloul began soliciting me, and approximately ten (10) months prior to the culmination of the crisis.  Based on my extensive research, I believe Mr. Sehnaoui's purchase of PPNB was

-2-

done in order to conceal and misappropriate my funds and the funds of countless other SGBL customers.   SGBL first denied my wife and I access to our account in October 2019.   Thereafter, in the middle of 2020, I was advised that SGBL was placing a withdrawal limit of $500 per month on my credit card despite my having a balance of at least 2.5 million with SGBL.  When I again attempted to access my funds in response to this, SGBL completely denied me access to my account and did not allow me to withdraw or transfer any of the funds.

6.     After SGBL first denied me access to my funds I began researching the cause of the banking crisis in Lebanon and in particular SGBL's role and involvement.  In doing so, I read countless news articles, investigative reports, journals and editorials including from the following online publications: Al Arabiya News (Dec. 2019 and Feb. 2020), DailyStar.Com (June 2020) and An-Nahar (November 6, 2020).  Some of these articles are attached hereto as Exhibit "B" and to the Request for Judicial Notice as Exhibit 1. My extensive research over the last few years has informed me  that Lebanese bankers (and politicians) transferred their own deposited monies out of Lebanon and into banking institutions in the United States.   I am also informed and believe that the Central Bank Governor has been implicated in money transfers out of the country.  This is evidenced in the article entitled "Two Lebanese American couple filed law suits against three Lebanese banks and the Central Bank in New York for allegedly refusing to transfer their $18 million deposits to outside Lebanon"  (Dailystar.com) as part of Exhibit "B."

7.     After this lawsuit was filed, I began receiving phone calls again from Ms. Dalloul, attempting to settle this dispute.  During the course of these phone calls, I formed an understanding that the reason I could no longer access my funds at SGBL was because they, along with countless other US based depositors, were transferred outside of the country, including to the United States, and particularly to PPNB (as well as other financial institutions doing business with other depositors), in order to keep them liquid due to the national banking crisis in Lebanon. I am informed and believe however, that

1   my deposited funds remain inaccessible wherever they may be, as I have not been able to
2   access them since (same month and year as in 5).

3       8.      The culmination of my discussions with SGBL led to the preparation and
4   delivery of the Settlement Agreement attached hereto as Exhibit "C," from SGBL's
5   general counsel in Lebanon, Alfred EL Khazen.  While we were unable to come to terms,
6   this agreement evidences SGBL's acknowledgement that I am owed the funds that are the
7   subject of this lawsuit, and that the funds are able to be delivered to me in the United
8   States, through PPNB or some other means.

9       9.      I believe that my wife and I, as California residents, were preyed upon
10  because we are Lebanese nationals, and because I've had previous banking relationships
11  in Lebanon and their knowledge of my financial status and immediate access to significant
12  funds in California led them to induce me into depositing my family's life savings with
13  SGBL.

14      10.     Of course, had I known any of this at the time SGBL first began soliciting
15  me, I never would have deposited a penny and would have kept my money inside the
16  United States.

17      I declare under penalty of perjury under the laws of the United States of America
18  that the foregoing is true and correct.

19      Executed this 21st day of June, 2021.

20
21
22                                  /s/ *Antoine Daoud*
23                                  _____
24                                  ANTOINE DAOUD
25
26
27
28