# EXHIBIT C

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (this "**Agreement**") is entered into as of [DATE] by and between (a) Antoine Daoud and Joumana Daoud (collectively, "**the Daouds**"), (b) Société Générale de Banque Au Liban, S.A.L., ("**SGBL**"), and (c) Antoun Sehnaoui ("**Sehnaoui**"). SGBL and Sehnaoui may be referred to collectively herein as "**the Bank defendants**." Collectively, the parties may be referred to as the "**Parties**."

## BACKGROUND

WHEREAS the Daouds are at the time of this Agreement the legal account holders of SGBL bank account number [###########] (the "**Account**"); and

WHEREAS on December 16, 2020, the Daouds filed a Complaint, initiating litigation (the "**Litigation**") in Orange County, California, Superior Court, alleging seven state law claims against the Bank defendants and Pikes Peak National Bank ("**PPNB**"), including, (1) negligent interference with prospective economic relations, (2) intentional interference with prospective economic relations, (3) misappropriation, (4) negligence, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) violation of Business and Professions Code § 17200; and

WHEREAS none of the defendants were ever properly served with the Complaint; and

WHEREAS on February 19, 2021, Sehnaoui removed the Litigation to the United States District Court for the Central District of California; and

WHEREAS on February 26, 2021, Sehnaoui moved to dismiss the Complaint with prejudice due to lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, failure to satisfy Rule 9(b) of the Federal Rules of Civil Procedure as to all seven counts, and failure to state any claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

WHEREAS on February 28, 2021, the Daouds voluntarily filed a Notice of Dismissal as to Sehnaoui pursuant to Rule 41(a) of the Federal Rules of Civil Procedure; and

WHEREAS the Parties have agreed to a settlement to dispose of the allegations described in the Complaint (the "**Dispute**"), and the Parties desire to avoid further expense and time, effort, and uncertainty in regard to the Litigation;

NOW, THEREFORE, in consideration of the mutual covenants and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties agree to the following terms and conditions as full and complete settlement of the Litigation and any otherwise unresolved matters relating to the Dispute:

## AGREED TERMS

1. <u>Annual Cross-Border Transfers for the Exclusive Purpose of the Daouds' Personal United States Tax Obligations</u>. After this Agreement is fully executed, upon (a) the written request by the Daouds (either or both) to SGBL and (b) written notice by the Daouds to SGBL of a United States bank account into which the Daouds wish to receive the funds described herein, SGBL will permit the transfer of a maximum of $150,000 of Account funds to the designated United States bank account, to the extent the requested funds remain in the Account. The requests may be made by the Daouds in one

or more parts, but in no event may the total amounts requested exceed $150,000 during any calendar year. The funds requested in accordance with this paragraph shall be transferred by SGBL from the Account to the Daouds' United States bank account within 5 days of receipt by SGBL of (a) and (b) above to the extent such funds exist in the Account. If (a) and (b) are received on different dates, the last date shall be operative. Any documentation sent pursuant to this paragraph shall be sent to:

<mark>[Email and/or Mailing Address for SGBL]</mark>

     2.    <u>Reinstatement of International Debit Card</u>. Within 10 days of the full execution of this Agreement, SGBL shall reinstate for use by the Daouds debit card number [<mark>#########</mark>]. This debit card may be used to withdraw up to $5,000 per month in the United States, to the extent such funds exist in the Account.

     3.    <u>Transfers and Withdrawals Subject to Lebanese Laws and Regulations</u>. All transfers or withdrawals described in Paragraphs 1 and 2 above shall be subject to limitations imposed by Lebanese laws and regulations, including but not limited to capital controls or other restrictions imposed by Lebanese legislator and/or Banque du Liban. All amounts and purposes should also be in compliance (in all respects) with any and all applicable laws, regulations and SGBL compliance checks. Such limitations shall constitute a complete defense to any assertion of breach, and in no event shall this contract be construed to require the Bank defendants to breach any Lebanese laws or regulations.

     4.    <u>No Claims for Attorneys' Fees</u>. The Parties acknowledge and agree that they are solely responsible for paying any attorneys' fees and costs they incurred relating to the Dispute, the Litigation, and/or this Agreement, and that no Party nor its attorney(s) will seek any award of attorneys' fees or costs from the other Party.

     5.    <u>Taxes</u>. The Daouds shall be solely responsible for, and are legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by it to any federal, state, local, or regional taxing authority as a result of this Agreement or any transfers that may occur as a result of or relating to the Agreement. The Daouds understand that the Bank defendants have not made, and the Daouds do not rely upon, any representations regarding the tax treatment of any transfers made pursuant to this Agreement. Moreover, the Daouds agree to indemnify and hold the Bank defendants harmless in the event that any governmental taxing authority asserts against the Bank defendants any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based upon the transfers contemplated by this Agreement.

     6.    <u>Mutual Release</u>. The Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Parties, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all

known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which any Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from:

      (a)      the Litigation;

      (b)      the Dispute;

      (c)      an agreement between the Parties;

      (d)      any other matter between the Parties; and/or

      (e)      any claims under federal, state, or local law, rule, or regulation.

This Agreement resolves any claim for relief that is, or could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related to or arising from the Litigation or the Dispute.

      7.      <u>No Outstanding or Known Future Claims/Causes of Action</u>. Each Party affirms that it has not filed with any governmental agency or court any type of action or report against the other Party other than the Litigation, and currently knows of no existing act or omission by the other Party that may constitute a claim or liability excluded from the release in paragraph 4 above.

      8.      <u>Acknowledgment of Settlement</u>. The Parties, as broadly described in paragraph 4 above, acknowledge that (a) the consideration set forth in this Agreement, which includes, but is not limited to, the consideration described in Paragraphs 1 and 2 above, is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against any other Party, as broadly described in paragraph 3 above, including by reason of the Litigation and (b) by signing this Agreement, and accepting the consideration provided herein and the benefits of it, they are giving up forever any right to seek further monetary or other relief from any the other Party, as broadly described in paragraph 3 above, for any acts or omissions up to and including the Effective Date, as set forth in paragraph 1, including, without limitation, the Dispute.

      9.      <u>No Admission of Liability</u>. The Parties acknowledge that the consideration described herein was agreed upon as a compromise and final settlement of disputed claims and that performance under the Agreement is not, and may not be construed as, an admission of liability by the Bank defendants and is not to be construed as an admission that the Bank defendants engaged in any wrongful, tortious, or unlawful activity. The Bank defendants specifically disclaim and deny (a) any liability to the Daouds and (b) engaging in any wrongful, tortious, or unlawful activity.

10. <u>Dismissal of Litigation</u>. The Daouds and their counsel shall take whatever actions are necessary to ensure that the Litigation is dismissed in its entirety as to all defendants named in the Complaint, with prejudice and without costs or fees, within 15 calendar days of the Effective Date. The dismissal shall make no reference to this Agreement or the existence of a settlement.

11. <u>Confidentiality of Agreement</u>. The Parties expressly understand and agree that this Agreement and its contents (including, but not limited to, the fact of payment and the amounts to be paid hereunder) shall remain CONFIDENTIAL and shall not be disclosed to any third party whatsoever, except the Parties' counsel, accountants, financial advisors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, and the Parties' management, officers, and Board of Directors and except as required by law or order of court. Any person identified in the preceding sentence to whom information concerning this Agreement is disclosed is bound by this confidentiality provision and the disclosing party shall be liable for any breaches of confidentiality by persons to whom he/she/it has disclosed information about this Agreement in accordance with this paragraph. Nothing contained in this paragraph shall prevent any Party from stating that the Parties have "amicably resolved all differences," provided, however, that in so doing, the Parties shall not disclose the fact or amount of any payments made or to be made hereunder and shall not disclose any other terms of this Agreement or the settlement described herein. If any subpoena, order, or discovery request (the "**Document Request**") is received by any of the Parties hereto calling for the production of the Agreement, such Party shall promptly notify the other Party hereto prior to any disclosure of same. In such case, the subpoenaed Party shall: (a) make available as soon as practicable (and in any event prior to disclosure), for inspection and copying, a copy of the Agreement it intends to produce pursuant to the Document Request unless such disclosure is otherwise prohibited by law; and (b) to the extent possible, not produce anything in response to the Document Request for at least ten (10) business days following such notice. If necessary, the subpoenaed Party shall take appropriate actions to resist production, as permitted by law, so as to allow the Parties to try to reach agreement on what shall be produced. This paragraph is a material part of this Agreement.]

12. <u>Non-Disparagement</u>. The Parties agree that, unless required to do so by legal process, the Parties, including all officers and directors, will not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any person whatsoever, about another Party or another Party's

    (a)    attorneys, or representatives;

    or

    (b)    affiliates, or any of its directors, officers, employees, attorneys, agents, or representatives.

For purposes of this paragraph, a disparaging statement or representation is any communication that, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of the person or entity to whom the communication relates.

13. <u>Agreement is Legally Binding</u>. The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors,

administrators, heirs, and estates. Moreover, the persons and entities referred to in paragraph 4 above, but not a Party, are third-party beneficiaries of this Agreement.

14. <u>Entire Agreement</u>. The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto.

15. <u>New or Different Facts: No Effect</u>. Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which any Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

16. <u>Interpretation</u>. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against any Party as the author or drafter of the Agreement.

17. <u>Choice of Law and Regulation</u>: This Agreement and all related documents, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws and regulations of Lebanon, including but not limited to regulations imposed by the Banque du Liban, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of Lebanon.

18. <u>Choice of Forum</u>: The courts of Beirut, Lebanon, shall be the exclusive forum for litigation concerning this Agreement. The Daouds, SGBL, and Sehnaoui consent to personal jurisdiction in such courts as well as service of process by notice sent by regular mail to

For the Daouds:

[ADDRESS FOR DAOUDS]

For SGBL and Sehnaoui

[ADDRESS FOR SGBL REPRESENTATIVE]

19. <u>Reliance on Own Counsel</u>. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the another Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by another

Party or by that another Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

20. <u>Counterparts</u>. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

21. <u>Authority to Execute Agreement</u>. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants, and/or other restrictions placed upon them by their respective entities.

22. <u>Effective Date</u>. The terms of the Agreement will be effective when an executed copy of this Agreement is delivered to said counsel for the Daouds as described in paragraph 1 above (the "**Effective Date**").

**READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

WITNESS

_____         _____
                                ANTOINE DAOUD
                                Dated: _____

WITNESS:

_____         _____
                                JOUMANA DAOUD
                                Dated: _____

WITNESS

_____         _____
                                ANTOUN SEHNAOUI
                                Dated: _____

ATTEST:

_____    _____
                                                          for SGBL

Title: _____

Dated: _____

7