# JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

|  |  |
|---|---|
| | Case No.: SACV 21-00335-CJC(KESx) |
| ANTOINE DAOUD and JOUMANA DAOUD, | |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION [Dkts. 28, 29] |
| v. | |
| SOCIETE GENERALE DE BANQUE AU LIBAN, S.A.L., PIKES PEAK NATIONAL BANK and DOES 1–100, | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiffs Antoine and Joumana Daoud bring this action against Defendants Societe Generale De Banque Au Liban, S.A.L. ("Banque Au Liban"), Pikes Peak National Bank ("Pikes Peak National"), and unnamed Does.  (Dkt. 26 [First Amended Complaint,

hereinafter "FAC"].)  Now Before the Court are both Defendants' respective motions to dismiss Plaintiff's FAC for lack of personal jurisdiction.  (Dkts. 28, 29.)  For the following reasons, each Defendant's motion is **GRANTED**.[1]

## II.  BACKGROUND

Plaintiffs are citizens of both Lebanon and the United States who live in Orange County.  (FAC ¶¶ 12, 25.)  Defendant Banque Au Liban is a Lebanese Joint Stock Company organized under the laws of Lebanon.  (Dkt. 21-1 [Declaration of Jeanine Kabengi, hereinafter "Kabengi Decl." ¶ 4.)  It is not registered as a business entity in the United States, and it has no offices, employees, or officers in this country.  (*Id.* ¶¶ 6–10.)  Defendant Pikes Peak National is a Colorado Corporation with all four of its branches there as well.  (Dkt. 28-1 ¶¶ 4–5.)[2]

Plaintiffs allege that "Defendant [Banque Au Liban] is a key player in the Lebanese bank Ponzi scheme."  (*Id.* ¶ 13.)  In December 2018, a Banque Au Liban branch manager allegedly called Plaintiffs and solicited them to deposit money with Banque Au Liban, promising a ten percent rate of return. (*Id.* ¶ 25.)  In January 2019, Plaintiffs transferred $2.5 million to their Banque Au Liban account.  (*Id.*)  Later, however, Plaintiffs sought to withdraw their money and were not allowed to do so. ((*Id.* ¶¶ 26, 29, 31.)  Consequently, Plaintiffs were unable to participate in two potentially lucrative investment opportunities.  (*Id.* ¶ 31.)  Plaintiffs bring claims for (1) intentional and negligent interference with prospective economic relations, (2) misappropriation,

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for July 12, 2021 at 1:30 p.m. is hereby vacated and off calendar.

[2]  Although Plaintiffs do not make any specific allegations against Pikes Peak National, Plaintiffs allege that it is liable as an alter ego of Banque Au Liban because the two companies have common ownership. (*See* FAC ¶ 6.)

(3) negligence, (4) intentional and negligent misrepresentation, (5) violation of California's Unfair Competition Law, and (6) violation of California Penal Code § 496. Defendants Banque Au Liban and Pikes Peak National each move to dismiss Plaintiffs' FAC for lack of personal jurisdiction.

## III.  LEGAL STANDARD

A party may move to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  In determining the bounds of their personal jurisdiction, "[f]ederal courts ordinarily follow state law."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Because California's long-arm statute "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," the Court need only analyze whether personal jurisdiction over Defendants comports with constitutional due process.  *Id*.

Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  Under the minimum contacts analysis, personal jurisdiction may be either general or specific.  *Id*.

General jurisdiction "permits a court to hear 'any and all claims' against a defendant, whether or not the conduct at issue has any connection to the forum [state]."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  A court may exercise general jurisdiction over an out-of-state defendant when that defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home [there]."  *Id.* at 125.  In contrast, specific jurisdiction arises when a defendant's contacts

with the forum state give rise to the claim in question.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984).  "[T]he defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  The plaintiff bears the burden of demonstrating that jurisdiction is appropriate.  *Unocal Corp.*, 248 F.3d at 922.

The plaintiff's burden "varies according to the nature of the pre-trial proceedings in which the jurisdictional question is decided."  *Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir. 1978).  "Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts."  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608–09 (9th Cir. 2010).  "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor."  *Id.*; *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  However, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (per curiam).

## IV.  DISCUSSION

The Court has neither general nor specific jurisdiction over either Banque Au Liban or Pikes Peak National.  Plaintiffs' claims are dismissed accordingly.

### A.      General Jurisdiction

"General jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State."  *Ranza*, 793 F.3d at 1069 (brackets omitted) (quoting *Daimler*, 571 U.S. at 134 n.11).  "Such contacts must be

'constant and pervasive.'" *Id.* "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Id.* "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Id.* When determining where a corporation is at home, courts cannot "focus solely on the magnitude of the defendant's in-state contacts" but must consider the "corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20.

Banque Au Liban's contacts with California are not "so continuous and systematic as to render [it] essentially at home" here. *See Daimler*, 571 U.S. at 125. Banque Au Liban is a Lebanese Joint Stock Company organized under the laws of Lebanon. (Kabengi Decl. ¶ 4.) It is not registered as a business entity in the United States, and it has no offices, employees, or officers in this country. (*Id.* ¶¶ 6–10.)

Similarly, Pikes Peak National is incorporated in Colorado and has all four of its branches there. (Dkt. 28-1 ¶¶ 4–5.) It has no branches or employees in California. (*Id.*) Accordingly, the Court may not exercise general jurisdiction over either Banque Au Liban or Pikes Peak National.

**B.    Specific Jurisdiction**

"In order for a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). The Ninth Circuit employs a three-part test for assessing whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction: (1) "the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (2) "the

claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (explaining that the purposeful direction analysis is used in suits, like this one, sounding in torts, while a purposeful availment test is used in suits sounding in contract). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The Court does not have specific jurisdiction over Banque Au Liban because Plaintiffs have failed to sufficiently allege that Banque Au Liban "purposefully direct[ed]" its activities towards California. *Picot*, 780 F.3d at 1211. A defendant "purposefully direct[s]" its activities towards a state by "(1) commit[ing] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. This analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. Accordingly, purposeful direction generally requires that the defendant "reach[] out" into the forum state by, say, seeking to "deliberately exploit a market [there]" or "entering a contractual relationship that envisioned continuing and wide-reaching contacts in [that] State." *Id.* "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.*

Plaintiffs fail to allege that Banque Au Liban expressly aimed its activities towards California independently of its contacts with Plaintiffs—who are both Lebanese citizens. Indeed, Plaintiffs allege that they were targeted because they were Lebanese citizens, not because they were part of a larger California market. (FAC ¶ 25 ["[Banque Au Liban] specifically located and targeted Plaintiffs in California, having known that Plaintiffs are Lebanese citizens, and previously had banking relationships in Lebanon."].)

Plaintiffs have failed to allege that Banque Au Liban had sufficient contacts with California outside of its contacts with Plaintiffs.  Plaintiffs allege only that "upon information and belief, Defendants" similarly solicited other California residents and "issued debit and credit cards to other patrons" for use in California.  (FAC ¶ 10.)  But "mere 'bare bones' assertions" of this kind, "unsupported by specific factual allegations[,] will not satisfy a plaintiff's pleading burden."  *Swartz*, 476 F.3d at 766.  Plaintiffs have not alleged any specific facts demonstrating that Banque Au Liban targeted a California market, advertised to California consumers, or in any other way "envisioned continuing and wide-reaching contacts" in California.  *Walden*, 571 U.S. at 285.  To the contrary, Plaintiffs' own theory is much more plausible—Banque Au Liban targeted Lebanese citizens who had a history of "banking relationships in Lebanon." (*See* FAC ¶ 25.)  Plaintiffs' residence in California was merely incidental.  *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017) (declining personal jurisdiction when "the forum state was only implicated by the happenstance of Plaintiffs' residence").

Plaintiffs argue that the Court may exercise specific personal jurisdiction over Pikes Peak National solely based on the actions of Banque Au Liban, Pikes Peak National's alleged alter ego.  Because Banque Au Liban's activities are insufficient to create personal jurisdiction in California, the same goes for Pikes Peak National.

//
//
//
//
//
//
//

**V.  CONCLUSION**

For the foregoing reasons, Defendants' respective motions to dismiss under Rule 12(b)(2) for lack of personal jurisdiction are both **GRANTED**.[3]  "Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting Plaintiff to amend would be an exercise in futility."  *El Dorado Cmty. Serv. Ctr. v. Cnty. of Los Angeles*, 2017 WL 6017297, at *3 (C.D. Cal. Jan. 3, 2017).  Plaintiffs already amended their complaint in response to Defendants' first motions to dismiss on the same grounds and still failed to provide the Court with any facts or argument indicating personal jurisdiction exists.  *See id.*  Accordingly, the Court concludes that leave to amend the FAC would be futile and **DENIES** Plaintiff leave to amend.  Plaintiff's FAC is **DISMISSED WITH PREJUDICE**.

DATED:     July 6, 2021

_____

HON. CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[3] Banque Au Liban's ex parte application to strike docket entry 32-3 is **GRANTED**.  (See Dkt. 38.)  The exhibit is a confidential agreement between the parties and it is irrelevant to both Defendants' motions and Plaintiffs' oppositions.  The Court declines to grant Attorneys' fees, however, as Banque Au Liban provided no evidence of the hours worked by its attorneys, their hourly rates, or whether these numbers are reasonable.